LITTLER MENDELSON, P.C.
Attorneys for Defendant
   Raymours Furniture Company, Inc.
900 Third Avenue
New York, NY  10022-3298
212.583.9600

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CONNIE PATTERSON, on behalf of herself and all others similarly situated, <br><br>               Plaintiff, <br><br>    -against- <br><br> RAYMOURS FURNITURE COMPANY, INC., <br><br>             Defendant. | 14 Civ. 5882 (VEC) |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL ARBITRATION OF PLAINTIFF'S INDIVIDUAL CLAIMS AND TO DISMISS THE COMPLAINT**

Of Counsel:
   David M. Wirtz

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

THE STANDARD OF REVIEW ............................................................................ 1

FACTUAL BACKGROUND .................................................................................. 2

ARGUMENT .......................................................................................................... 9

   I.    THE FEDERAL ARBITRATION ACT REQUIRES PLAINTIFF TO HONOR
        HER AGREEMENT TO ARBITRATE ALL OF THE CLAIMS IN HER FEDERAL
        COMPLAINT ................................................................................................ 9

      A.   There is no issue of material fact in this case as to whether all relevant parts
          of the Second Circuit's test for determining if arbitration should be compelled
          have been met. ........................................................................................ 9

         (1)   First Part – The parties entered into a valid arbitration agreement. ....................... 11

         (2)   Second Part – All claims that appear in Plaintiff's federal complaint are
             within the scope of her arbitration agreement. ...................................... 14

         (3)   Third Part – Plaintiff's federal statutory claim is arbitrable as a matter
             of law. ................................................................................................ 15

  II.   THIS COURT SHOULD ALSO ENFORCE PLAINTIFF'S AGREEMENT TO
        PROCEED ON AN INDIVIDUAL BASIS. ................................................ 16

 III.   THE COURT SHOULD DISMISS PLAINTIFF'S COMPLAINT WITHOUT
        PREJUDICE TO HER ABILITY TO PURSUE SUCH COMPENSATION- OR
        EMPLOYMENT-RELATED CLAIMS AS SHE MAY HAVE IN ARBITRATION. ... 20

 IV.   THE CLAIMS OF ANY INDIVIDUALS WHO HAVE FILED A CONSENT
        FORM, OR WHO OPT IN WHILE THIS MOTION IS *SUB JUDICE*, SHOULD
        BE DISMISSED WITHOUT PREJUDICE. ................................................ 21

CONCLUSION ...................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*American Express Co. v. Italian Colors Rest.,*
 133 S. Ct. 2304 (2013) ...................................................................... 10, 17, 18

*Arrigo v. Blue Fish Commodities,*
 408 Fed. Appx. 480 (2d Cir. 2011) .......................................................... 16

*AT&T Mobility, LLC v. Concepcion,*
 132 S. Ct. 1740 (2011) ........................................................................ 10, 17

*Beletsis v. Credit Suisse First Boston Corp.,*
 2002 U.S. Dist. LEXIS 16586 (S.D.N.Y. Aug. 28, 2002) ........................... 12

*Bensadown v. Jobe-Riat,*
 316 F.3d 171 (2d Cir. 2003) ...................................................................... 1

*Brown v. Coca-Cola Enterprises,*
 2009 U.S. Dist. LEXIS 35798 (E.D.N.Y. April 28, 2009) ........................... 13

*Brown v. St. Paul Travelers Co.,*
 559 F. Supp. 2d 288 (W.D.N.Y. 2008), *aff'd* 331 F. App'x 68 (2d Cir. 2009) ........... 13

*Brown v. St. Paul Travelers Cos.,*
 331 Fed. Appx. 68, 2009 U.S. App. LEXIS 13154 (2d Cir. June 19, 2009) ......... 12, 20

*Chanchani v. Salomon/Smith Barney, Inc.,*
 2001 U.S. Dist. LEXIS 2036 (S.D.N.Y. March 1, 2001) ........................... 12

*Circuit City Stores, Inc. v. Adams,*
 532 U.S. 105 (2001) ................................................................................ 10

*Collins & Aikman Products Co. v. Building Systems, Inc.,*
 58 F.3d 16 (2d Cir. 1995) ..................................................................... 9, 14

*Compucredit Corp. v. Greenwood,*
 132 S. Ct. 665 (2012) .............................................................................. 15

*Curry v. Volt Info. Svcs., Inc.,*
 2008 U.S. Dist. LEXIS 20910 (S.D.N.Y. Mar. 18, 2008) ........................... 12

*Dixon v. NBCUniversal Media, LLC,*
 947 F. Supp. 2d 390 (S.D.N.Y. May 28, 2013) ............................... 13, 15, 19

*Franco v. Allied Interstate LLC*,
    2014 U.S. Dist. LEXIS 47077 (April 2, 2014) ............................................................ 21

*Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*,
    815 F.2d 840 ............................................................................................................ 9, 10

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991) ................................................................................................... 10, 18

*Hawkins v. Toussaint Capital Partners, LLC*,
    2010 U.S. Dist. LEXIS 53264 (S.D.N.Y. May 27, 2010) ............................................ 16

*Isaacs v. OCE Business Services*,
    13 Civ. 0548 ................................................................................................................. 20

*Kuchinsky v. Curry*,
    2009 U.S. Dist. LEXIS 45390 (S.D.N.Y. May 28, 2009) ............................................ 16

*LaVoice v. UBS Fin. Servs.*,
    2012 U.S. Dist. LEXIS 5277 (S.D.N.Y. January 13, 2012) ........................................... 1

*Litvinov v. United Health Group, Inc.*,
    2014 U.S. Dist. LEXIS 36237 (S.D.N.Y. Mar. 11, 2014) .............................. 12, 13, 20

*Manigault v. Macy's East, LLC*,
    318 Fed. Appx. 6 (2d Cir. March 25, 2009) ............................................................... 13

*Martin v. SCI Mgmt. L.P.*,
    296 F. Supp. 2d 462 (S.D.N.Y. 2003) ................................................................... 15, 20

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ..................................................................................................... 10, 14

*Nitro-Lift Technologies, LLC v. Howard*,
    133 S. Ct. 500 (2012) .................................................................................................. 14

*Opalinski v. Robert Half Int'l Inc.*,
    2014 U.S. App. LEXIS 14538 (3d Cir. July 30, 2014) ............................................... 17

*Perry v. Thomas*,
    482 U.S. 483 (1987) .................................................................................................... 10

*Powell v. BJ's Wholesale Club, Inc.*,
    No. 3:14-cv-00081 (D. Conn. Aug. 13, 2014) ...................................................... 19, 20

*Raniere v. Citigroup Inc.,*
    533 Fed. Appx. 11 (2d Cir. 2013) ................................................................. 18

*Reed Elsevier, Inc. v. Crockett,*
    734 F.3d 594 (6th Cir. 2013) .................................................................... 17

*Rent-A-Center, West, Inc., v. Jackson,*
    561 U.S. 63 (2010) ...................................................................... 14, 17

*Ryan v. JP Morgan Chase & Co.,*
    2013 U.S. Dist. LEXIS 24628 (S.D.N.Y. Feb. 21, 2013) ............................... 15, 18, 20

*Salzano v. Lace Entm't Inc.,*
    2014 U.S. Dist. LEXIS 98029 (S.D.N.Y. July 18, 2014) ..................................... 15, 16

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,*
    559 U.S. 662 (2010) .......................................................................... 10

*Sutherland v. Ernst & Young LLP,*
    726 F.3d 290 (2d Cir. 2013) .................................................................. 16, 18

*Thomas v. Public Storage, Inc.,*
    957 F. Supp. 2d 496 (S.D.N.Y. 2013) ......................................................... 13, 20

*Torres v. United Healthcare Svcs., Inc.,*
    2013 U.S. Dist. LEXIS 14200 (E.D.N.Y. Feb. 1, 2013) .................................. 15, 18, 20

## STATUTES

9 U.S.C. § 2 ................................................................................................ 9

9 U.S.C. § 3 ............................................................................................... 21

9 U.S.C. § 4 ......................................................................................... 9, 17, 21

## PRELIMINARY STATEMENT

Defendant Raymours Furniture Company, Inc. ("Raymour & Flanigan" or "the Company") submits this Memorandum of Law in support of its Motion to Compel Arbitration of Plaintiff's Individual Claims and to Dismiss the Complaint.

Plaintiff, Connie Patterson, and Raymour & Flanigan are parties to a written arbitration agreement that is expressly covered by the Federal Arbitration Act and that covers all employment-related claims, including all claims set forth in her federal Complaint. Her arbitration agreement also requires Plaintiff to proceed on an individual, rather than a collective or class, basis. Consistent with the Federal Arbitration Act, and Supreme Court and Second Circuit precedent, courts in this Circuit now routinely enforce precisely this kind of arbitration agreement and class action waiver, and this Court should do the same here.

## THE STANDARD OF REVIEW

"In the context of motions to compel arbitration brought under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4 (2000), the court applies a standard similar to that applicable for a motion for summary judgment." *Bensadown v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). Thus, "[a] motion to compel arbitration may be granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *LaVoice v. UBS Fin. Servs.,* 2012 U.S. Dist. LEXIS 5277, at *2 (S.D.N.Y. January 13, 2012).

Here, Raymour & Flanigan's motion is predicated upon allegations in the Complaint, the arbitration agreement between the parties, and the accompanying Declaration of Stephen McPeak, dated September 8, 2014 ("McPeak Decl."). These materials demonstrate that there is no genuine issue of material fact, and that the arbitration agreement should be enforced according to its terms.

## FACTUAL BACKGROUND

### The Complaint

Plaintiff alleges that Raymour & Flanigan failed to pay her, and the class of employees she purports to represent, overtime compensation in violation of the Fair Labor Standards Act ("FLSA") and the New York State Labor Law ("NYLL"). She also alleges that Defendant violated the NYLL by failing to pay commissions and spread-of-hours pay, and by not providing her and the purported class with proper wage notices and wage statements. (Compl. at ¶¶ 71 to 109.) Plaintiff brings her claims individually and as the representative of a purported class pursuant to section 216(b) of the FLSA and F.R.C.P. Rule 23. (*Id.* at ¶¶ 32 to 53.)

### Raymour & Flanigan's Associate Handbook

Raymour & Flanigan hired Ms. Patterson on June 20, 2005 as a Sales Associate. (McPeak Decl. at ¶ 5.) At the time of hire, the Company provided her with its Associate Handbook. (*Id.*) Ms. Patterson acknowledged receipt of the Handbook and confirmed that she understood its contents. (*Id.*, Ex. 1.)

In October 2009, the Company updated its Handbook, providing copies to all employees, including Ms. Patterson. (*Id. at* ¶ 6.) As part of her acknowledgement of

receipt, Ms. Patterson confirmed her promise to become familiar with the terms of the Associate Handbook and to keep abreast of changes to Company policies as they occurred.  She also acknowledged that her continued employment with the Company would signify her agreement that all future changes to the policies set forth in the Handbook would apply to her:

> I further understand that Raymour & Flanigan has the right to change its employment policies at any time, that I am responsible for becoming familiar with those changes as they occur, that my continued employment constitutes my agreement that such changes apply to me, and that I can find the most up-to-date version of the Handbook and the company's polices through HR Direct on Raymour & Flanigan's Intranet.

(*Id.*, Ex. 2.)

On July 16, 2010, the Company notified all Sales Associates that it had implemented a Self-Service Portal (the "Portal") and that, going forward, employees should use the Portal to review the Associate Handbook, access their payroll information (such as weekly Direct Deposit notices and end-of-year W-2 forms) and manage their employment benefits.  (*Id.* at ¶ 7, Exs. 3-4.)  Each employee, including Plaintiff, received two forms of notification of the new service – an email and a paper copy of the announcement that accompanied each employee's weekly pay stub.  (*Id.* at ¶ 7, Exs. 3-4.)  At the same time that it rolled out the Portal, Raymour & Flanigan also uploaded its then-current Associate Handbook to the Portal.  (*Id.* at ¶ 8.)

In order to register with the Portal and gain secure access, employees were required to input their Social Security number and contact information matching the information that appeared in Raymour & Flanigan's payroll system.  (*Id.* at ¶ 8.)  On July

19, 2010, at 5:48 p.m., Plaintiff registered for a secure Portal ID and password by providing her Social Security number, her home e-mail address and her work telephone number, all of which matched Raymour & Flanigan's payroll system. As a result, she was issued a secure ID. (*Id.*, Ex. 5.) Plaintiff accessed the Portal throughout her employment and last accessed it on November 6, 2013, at 3:35 p.m. (*Id.*, Ex. 5.)[1] Plaintiff was terminated for cause in February of 2014. (*Id.* at ¶ 11.)

### The Company Implements its Employee Arbitration Program

Over two years before Plaintiff was terminated, Raymour & Flanigan adopted an Employment Arbitration Program ("Arbitration Program"), which it incorporated into its Associate Handbook. (*Id.* at ¶ 12, Ex. 6.) The Company uploaded the new version of the Handbook to the Portal, and notified all Sales Associates by e-mail on February 1, 2012 that the Handbook was being updated, and that an Arbitration Program had been added. (*Id.* at ¶¶ 12-13, Ex. 7.) That e-mail alerted the Sales Associates that:

> **Because of the significant updates that have been made [to the Associate Handbook], we will be requiring all associates to acknowledge that they have reviewed the revised handbook.** For your convenience you will be able to review and acknowledge the revised handbook through the **Self Service Portal for Associates.** Simply click on the link below and it will take you to the log in page of the portal. . . . Below is a brief description of the updates: . . .

---

[1] Sales Associates regularly utilize the Portal to access a variety of important documents and benefits information. For example, Raymour & Flanigan holds open enrollment for healthcare, dental, vision and other employment benefits in October of each calendar year and since October 2010, employees, including Plaintiff, have been required to confirm benefit elections using the Portal. (*Id.* at ¶ 9.) As of January 2011, all employees who have Direct Deposit must also utilize the Portal in order to access their pay stubs. (*Id.*)

- **Employment Arbitration Program (Page 57-66).** The addition of this program, similar to many other such programs adopted by employers across the country, implements a consistent and efficient way for our associates and the company to resolve employment disputes covered by the program.

It is important that you give special attention to these updated sections when reviewing the handbook.

(*Id.,* Ex. 7 [bold emphasis in original]).

All employees, including Plaintiff, were required, as a term and condition of their employment, to access the updated policies (including the Arbitration Program), review them, and certify that they had read each policy by checking a box marked, "I certify I have read the policy above" and then clicking a button marked "Done." (*Id.* at ¶ 15.) Upon clicking the "Done" button, the time and date of the employee's act was electronically memorialized in the Portal. During the procedure for accessing, reviewing and acknowledging Raymour & Flanigan's policies, employees can see, scroll through, and, if desired, print a full copy of the Associate Handbook and Arbitration Program. (*Id.* at ¶ 16.) Plaintiff logged onto the Portal and acknowledged her access, receipt, and review of the updated Associate Handbook and Arbitration Program on February 9, 2012, at 1:41 p.m. (*Id.*, Ex. 9.)

Sixteen months later, in April 2013, also before Plaintiff was terminated, Raymour & Flanigan again updated its Associate Handbook and the Arbitration Program. The Company again notified all Sales Associates, including Plaintiff, by e-mail that they were required to access the Associate Handbook through the Portal, read it, and acknowledge receipt. (*Id.,* Ex. 11.) Plaintiff logged onto the Portal and acknowledged her access,

receipt, and review of the Associate Handbook containing the revised Arbitration Program on April 27, 2013, at 10:28 a.m. (*Id.*, Ex. 12).   That updated Associate Handbook and Arbitration Program then governed her conditions of employment until she was terminated in February of 2014.

### Scope of the Employee Arbitration Program

The Arbitration Program is written and presented to employees in an easy-to-read, FAQ-type format.   It states that the Program is "an essential element of [each employee's] continued employment relationship with Raymour & Flanigan and is a condition of [each employee's] employment."   (*Id.*, Ex. 10).   The Program requires employees to submit to final and binding arbitration all employment- and compensation-related claims that are asserted or pursued at any time after January 1, 2012.   (*Id.*, Ex. 10 at p. 58.)

The Arbitration Program describes covered disputes as follows:

> The   Program   covers   all   employment-related   and compensation-related "Claims" between "you" and "us" (those terms are further defined below) that are asserted or pursued at any time after the effective date of this Program, regardless of whether those Claims arose before or after the effective date of this Program and regardless of whether such Claims were initially raised before the effective date of this Program. It includes disputes that you raise regarding any compensation plans you have previously entered into with Raymour & Flanigan.

(*Id.*, Ex. 10 at p. 58 [underlined emphasis in original].)

The term "Claims" is defined as follows:

> [A]ny employment-related or compensation-related claims, disputes, controversies or actions between you and us that in

any way arise from or relate to your employment with us or
the termination of your employment with us **and** that are
based upon a "<u>legally-protected right.</u>" This includes disputes
about your hiring, firing, wages or compensation, discipline,
leaves of absence, accommodations and workplace treatment
as well as our policies and practices (including any pattern,
practice, act or omission) relating to such matters. "Claim"
means not only initial claims but also counterclaims, cross-
claims and third-party claims, regardless of whether such
claims seek legal, equitable or declaratory relief. Examples of
such Claims include (but are not limited to) those alleging
discrimination, harassment, hostile work environment,
retaliation, or failure to pay wages in accordance with law.

(*Id.,* Ex. 10 at p. 59 [underlined and bold emphasis in original]).

The Arbitration Program also defines a "<u>legally-protected right</u>" and identifies

specific state and federal laws covered by the Arbitration Program as follows in relevant

part:

> "<u>Legally-protected right</u>" means any right that is guaranteed
> to you or protected for you by statute, regulation, ordinance,
> constitution, contract or common law.  This includes (but is
> not limited to) rights under: . . . .
>
> - the federal Fair Labor Standards Act or any state wage
>   and hour laws . . . .
>
> - any other federal, state or local statute, regulation or
>   common law doctrine regarding employment
>   discrimination, retaliation, whistleblowing, leave of
>   absence, interference with protected rights, conditions
>   of employment or termination of employment or
>   payment of salary, wages, commissions, paid time off
>   or expense reimbursements.

(*Id.,* Ex. 10 at pp. 59-60 [underlined emphasis in original].)

Finally, the Arbitration Program prohibits employees from pursuing "Claims" as so-defined on a class or collective action basis, which is explained to employees in the same easy to understand FAQ format as follows:

> ***CAN CLAIMS BE DECIDED BY CLASS OR COLLECTIVE ACTION?***
>
> **No. This section describes the "Class Action Waiver" of the Program. Claims under this Program cannot be litigated by way of class or collective action. Nor may Claims be arbitrated by way of a class or collective action. All Claims between you and us must be decided individually. This means that, notwithstanding any other provision of this Program, if you or we elect to arbitrate a Claim, neither you nor we will have the right, with respect to that Claim, to do any of the following in court or before an arbitrator under this Program:**
>
> - **obtain relief from a class action or collective action, either as a class representative, class member or class opponent;**
> - **act as a private attorney general; or**
> - **join or consolidate your Claim with the Claims of any other person.**
>
> **Thus, the arbitrator shall have no authority or jurisdiction to process, conduct or rule upon any class, collective, private attorney general or multiple-party proceeding under any circumstances.**

(*Id.*, Ex. 10, p. 66 [italics and bold emphasis in original]).

## ARGUMENT

I.  **THE FEDERAL ARBITRATION ACT REQUIRES PLAINTIFF TO HONOR HER AGREEMENT TO ARBITRATE ALL OF THE CLAIMS IN HER FEDERAL COMPLAINT.**

  A.  **There is no issue of material fact in this case as to whether all relevant parts of the Second Circuit's test for determining if arbitration should be compelled have been met.**

"[F]ederal policy strongly favors arbitration as an alternative dispute resolution process." *Collins & Aikman Products Co. v. Building Systems, Inc.*, 58 F.3d 16, 19 (2d Cir. 1995) (internal citation omitted).  The FAA provides at section 2 that written agreements to arbitrate controversies "shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.[2]  Section 4 of the FAA is directive.  It requires a federal court to order parties to proceed to arbitration if there has been a failure, neglect, or refusal of any party to honor an agreement to arbitrate.  *See* 9 U.S.C. § 4.

As the Second Circuit has observed:  "These provisions are mandatory:  'by its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'"  *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.,* 815 F.2d 840, 844 (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original)).  Indeed, it is the intent of Congress "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible."

---

[2] The Raymour & Flanigan Arbitration Program expressly states that it is governed by the FAA. *See* McPeak Decl., Ex. 10, p. 67 ("Arbitration proceedings under this Program shall comply with and be governed by the provisions of the FAA").

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 22 (1983); *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,* 559 U.S. 662, 682 (2010) ("we have said on numerous occasions that the central or 'primary' purpose of the FAA is to ensure that 'private agreements to arbitrate are enforced according to their terms'") (internal citations omitted); *AT&T Mobility, LLC v. Concepcion,* 132 S. Ct. 1740, 1748 (2011) ("The 'principal purpose' of the FAA is to 'ensure that private arbitration agreements are enforced according to their terms'") (internal citations omitted); *American Express Co. v. Italian Colors Rest.,* 133 S. Ct. 2304, 2309 (2013) ("courts must 'rigorously enforce' arbitration agreements according to their terms") (internal citations omitted).[3]

The Second Circuit has enunciated a four-part test for determining whether arbitration should be compelled in a given case. First, the court must find that the parties agreed to arbitrate their dispute. Second, it must determine that the asserted claims fall within the scope of the arbitration agreement. Third, if federal statutory claims are at issue, the court must assess whether Congress intended those claims to be non-arbitrable. Fourth, if only some of the claims are subject to arbitration, the court must decide whether to stay the balance of the proceedings pending arbitration. *Genesco, Inc.,* 815 F.2d at 844.

---

[3] In keeping with this "liberal federal policy favoring arbitration," the Supreme Court has consistently endorsed arbitration as an effective means of dispute resolution in employment cases. *See, e.g., Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001) (enforcing arbitration agreement signed during employee's application process with respect to claims brought under California's anti-discrimination statute); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991) (ADEA case enforcing agreement to arbitrate controversies arising out of employment that was contained in securities representative registration application); *Perry v. Thomas,* 482 U.S. 483, 490-91 (1987) (enforcing private arbitration agreement in action for collection of wages).

The first three parts of this test are satisfied in this case, and the fourth part is inapplicable, because all of Plaintiff's claims are subject to arbitration.

### (1)   First Part – The parties entered into a valid arbitration agreement.

The first part of the *Genesco* test is satisfied in not one, but two ways here. Plaintiff entered into a valid arbitration agreement: (i) by signing an acknowledgment in October 2009 confirming that her continued employment signified her agreement to be bound by all Company policies, and then continuing her employment after receiving notice of the Arbitration Program in 2012 and again in 2013, and also (ii) when she affirmatively acknowledged, twice, that she had received and reviewed the Arbitration Program in the Associate Handbook, which made clear that arbitration of employment- and compensation-related claims were a required term of her continued employment.

Specifically, on October 6, 2009, Plaintiff signed an Acknowledgment promising the Company that her continued employment signified her agreement to be bound by all Company policies going forward. (McPeak Decl., Ex. 2.)  On February 1, 2012, Plaintiff received Raymour & Flanigan's Associate Handbook and was expressly told that the Handbook contained an Arbitration Program. (*Id.*, Ex. 7.)  Eight days later, Plaintiff electronically certified that she had read the Handbook, including the Arbitration Program. (*Id.*, Ex. 9.)  Thereafter, she continued her employment with the Company for fifteen months when, in April 2013, she received a revised Associate Handbook, containing the revised Arbitration Program.  On April 27, 2013, she electronically certified that she had reviewed the revised Associate Handbook, including the Arbitration

Program, which is described as "a condition of your employment." (*Id.*, Ex. 12.) Again, Plaintiff continued her employment with Raymour & Flanigan for another nine months – further manifesting her agreement to the Arbitration Program – until her employment was terminated in February, 2014.

"Courts in this district routinely uphold arbitration agreements contained in employee handbooks where, as here, the employee has signed an acknowledgment form." *Chanchani v. Salomon/Smith Barney, Inc.,* 2001 U.S. Dist. LEXIS 2036, at *7 (S.D.N.Y. March 1, 2001). By electronically acknowledging that she had received and read the Associate Handbook and the Arbitration Program it contained, Plaintiff agreed to be bound by it as a matter of law. *See Litvinov v. United Health Group, Inc.*, 2014 U.S. Dist. LEXIS 36237, at *11 (S.D.N.Y. Mar. 11, 2014) (plaintiff's assent to arbitration policy found where he received notice of the policy and electronically acknowledged it); *Curry v. Volt Info. Svcs., Inc.,* 2008 U.S. Dist. LEXIS 20910, at *2-7 (S.D.N.Y. Mar. 18, 2008) (compelling arbitration where employee received handbook containing arbitration policy and signed an acknowledgment form); *Beletsis v. Credit Suisse First Boston Corp.*, 2002 U.S. Dist. LEXIS 16586, at *8-9 (S.D.N.Y. Aug. 28, 2002) (same).

Arbitration agreements in employee handbooks become binding in a second way as well in this Circuit, when the employee simply continues to work after receiving notice of the arbitration provision, which is what the Plaintiff also did in this case. *See Brown v. St. Paul Travelers Cos.,* 331 Fed. Appx. 68, 2009 U.S. App. LEXIS 13154, at *3 (2d Cir. June 19, 2009) (employee is "deemed to have accepted" the arbitration policy contained in employee handbook by continuing to work after being advised that it was her

responsibility to read and understand all of the company's policies); *Thomas v. Public Storage, Inc.*, 957 F. Supp. 2d 496, at *7-10 (S.D.N.Y. 2013) (plaintiff bound by handbook-based arbitration policy where she continued working after receiving notice of the policy, despite her challenge that she never signed anything and that her manager hijacked her user ID to create her electronic acknowledgment); *Manigault v. Macy's East, LLC*, 318 Fed. Appx. 6, 8 (2d Cir. March 25, 2009) ("New York, unlike other jurisdictions, has found that continued employment, without more, is sufficient to manifest assent"); *Litvinov,* 2014 U.S. Dist. LEXIS 36237, at *12 ("there is no question that [employees were] on notice about the Arbitration Policy and the fact that if they began and/or continued working for [employer] they would be deemed to have assented to its terms"); *Dixon v. NBCUniversal Media, LLC,* 947 F. Supp. 2d 390, 400 (S.D.N.Y. May 28, 2013) (plaintiff's continued employment after receiving notice of arbitration agreement "constituted acceptance of the binding arbitration agreement"); *Brown v. Coca-Cola Enterprises,* 2009 U.S. Dist. LEXIS 35798, at *20-21 (E.D.N.Y. April 28, 2009) (by continued employment, plaintiff manifested assent to arbitration provision). Thus, by continuing her employment for twenty-four months after acknowledging receipt of the initial Arbitration Program, and for nine months after acknowledging receipt of the revised Arbitration Program, Plaintiff is "deemed to have accepted" its terms.[4]

---

[4] This is true even where the handbook contains an at-will contract disclaimer. *See Brown v. St. Paul Travelers Co.,* 559 F. Supp. 2d 288, 292 (W.D.N.Y. 2008), *aff'd* 331 F. App'x 68 (2d Cir. 2009) (where employee handbook contains language "providing that the handbook does not constitute a . . . contract of employment or that the arbitration policy may be amended," it is nevertheless enforceable when the employee is advised of the policy and that "compliance with it [is] a condition of employment"). The United States Supreme Court has made unmistakably

In sum, the first part of the Second Circuit's *Genesco* test is satisfied here.

> **(2)   Second Part – All claims that appear in Plaintiff's federal complaint are within the scope of her arbitration agreement.**

Prevailing federal precedent directs the courts to "construe arbitration clauses as broadly as possible." *Collins & Aikman Prods.*, 58 F.3d at 19 (internal quotations and citations omitted). "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem. Hosp.*, 460 U.S. at 24-25.

There is no doubt here. Raymour & Flanigan's Arbitration Program broadly covers "all employment-related and compensation-related" claims. "Claims" are defined to include anything based upon a "legally protected right." "Legally protected rights" are defined to include "any right that is guaranteed to you or protected for you by statute, regulation, ordinance, constitution, contract or common law.  This includes (but is not limited to) rights under:  the federal Fair Labor Standards Act or any state wage and hour laws. . . ." (McPeak Decl., Ex. 10, p. 58-60.)

---

clear that, in determining the enforceability of an arbitration agreement, a court may not consider the document (or, in this case, the employee handbook) surrounding the arbitration provision; rather, it should confine its review to the arbitration provision itself.  Thus, in *Nitro-Lift Technologies, LLC v. Howard,* 133 S. Ct. 500 (2012), the Court vacated a decision of the Oklahoma Supreme Court in which that court did not confine its review to the arbitration provision and declined to enforce it based upon provisions of the surrounding employment agreement.  *Id.* at 502.  The Supreme Court held that, in doing so, "[t]he Oklahoma Supreme Court's decision disregards this Court's precedents on the FAA."  *Id.* at 503.  Under those precedents, courts must examine arbitration provisions themselves to determine their enforceability.  "For these purposes, an 'arbitration provision is severable from the remainder of the contract.'"  *Id.* (citing *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 445 (2006)); *Rent-A-Center, West, Inc. v. Jackson,* 561 U.S. 63, 64 (2010) (same).

Plaintiff seeks overtime wages under the FLSA and overtime wages, unpaid commissions, spread-of-hours pay, and proper wage notices and wage statements under the NYLL.  All of these claims fall squarely within the scope of the definitions set forth, *supra,* and all are expressly covered by the parties' agreement to arbitrate.

### (3)   Third Part – Plaintiff's federal statutory claim is arbitrable as a matter of law.

"Plaintiff, as the party opposing arbitration, has the burden to show that the legislature intended to preclude arbitration for NYLL and FLSA claims."  *See Salzano v. Lace Entm't Inc.,* 2014 U.S. Dist. LEXIS 98029, at *8 (S.D.N.Y. July 18, 2014). Plaintiff cannot meet that burden here.  It has been repeatedly held in this District that an employer and an employee can agree to arbitrate federal statutory claims, including claims arising under the FLSA.  *See Compucredit Corp. v. Greenwood,* 132 S. Ct. 665, 672-73 (2012) (if Congress meant to prohibit arbitration, it would have expressly exempted plaintiff's claims from arbitration); *Salzano,* 2014 U.S. Dist. LEXIS 98029, at *8 (compelling plaintiff to arbitrate his FLSA claims:  "No legislative proscription bars arbitrating . . . FLSA claims"); *Ryan v. JP Morgan Chase & Co.*, 2013 U.S. Dist. LEXIS 24628, at *8 (S.D.N.Y. Feb. 21, 2013) ("Congress intended FLSA claims to be arbitrable."); *Martin v. SCI Mgmt. L.P.*, 296 F. Supp. 2d 462, 467 (S.D.N.Y. 2003) (there is "no indication that Congress intended [FLSA] claims to be nonarbitrable.") (citing *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 506 (4th Cir. 2002)).  *See also Dixon,* 947 F. Supp. 2d at 406 (compelling arbitration of FLSA claims); *Torres v. United Healthcare*

*Svcs., Inc.*, 2013 U.S. Dist. LEXIS 14200, at *19 (E.D.N.Y. Feb. 1, 2013) (FLSA claims arbitrable).

There is also no question in this Circuit that an employer and employee can agree to arbitrate NYLL claims. *See Sutherland v. Ernst & Young LLP,* 726 F.3d 290, 292 n.1 (2d Cir. 2013) ("in light of our conclusion that Sutherland's FLSA claims must proceed individually in arbitration pursuant to the [FAA], so too must her NYLL claim"); *Arrigo v. Blue Fish Commodities*, 408 Fed. Appx. 480, 483 (2d Cir. 2011) (affirming the district court's decision compelling arbitration of plaintiff's state and federal wage claims and dismissing the action); *Salzano,* 2014 U.S. Dist. LEXIS 98029, at *4 (compelling plaintiff to arbitrate his NYLL claims for unpaid wages: "FLSA and NYLL claims were not intended by the respective legislatures to be nonarbitrable"); *Hawkins v. Toussaint Capital Partners, LLC*, 2010 U.S. Dist. LEXIS 53264, at *1, 13-14 (S.D.N.Y. May 27, 2010) (granting motion to compel arbitration of plaintiff's NYLL claims); *Kuchinsky v. Curry*, 2009 U.S. Dist. LEXIS 45390, at *2-3, 12 (S.D.N.Y. May 28, 2009) (same).

Accordingly, the third, and final, part of the *Genesco* test is also met here as a matter of law, and arbitration should be compelled accordingly.

## II.   THIS COURT SHOULD ALSO ENFORCE PLAINTIFF'S AGREEMENT TO PROCEED ON AN INDIVIDUAL BASIS.

Pursuant to the FAA, and United States Supreme Court and Second Circuit precedent, Raymour & Flanigan is also entitled to an order compelling Plaintiff to submit her claims to arbitration on an individual basis, as required by the "Class Action Waiver" provision of the Arbitration Program to which she agreed.

"The FAA reflects the fundamental principle that arbitration is a matter of contract." *Rent-A-Center, West, Inc. v. Jackson,* 561 U.S. 63, 67 (2010).  Section 4 of the FAA provides that a party may obtain an order compelling arbitration "in the manner provided for in [the parties'] agreement."  9 U.S.C. § 4.  Here, the "manner provided" appears in the parties' agreement, which prohibits claims from being pursued on a collective or class basis. (*See* McPeak Decl., Ex. 10).[5]

The Supreme Court has held such waivers should be enforced.  In *AT&T Mobility LLC v. Concepcion,* 131 S. Ct. 1740, 1745 (2011), the Court reaffirmed the bedrock principle of federal arbitration law that arbitration agreements are to be enforced as written.  131 S. Ct. at 1753.[6]  More recently, in *American Express Co. v. Italian Colors Rest.,* 133 S. Ct. 2304, 2309 (2013), the Court reversed the decision of the Second Circuit

---

[5] The Arbitration Program to which Plaintiff consented expressly states that it is for "a court . . . to decide . . . disputes about the validity, enforceability, coverage or scope" of the Arbitration Program, including "without limitation, the Class Action Waiver." McPeak Decl., Ex. 10, pp. 60-61.  Thus, even if the Arbitration Program were silent regarding the Court's authority to determine if the parties' agreement prohibits class arbitration, the only two Circuit Courts to address this issue have determined that the Court must decide whether class arbitration is permissible. *See Opalinski v. Robert Half Int'l Inc.,* 2014 U.S. App. LEXIS 14538, at *21-22 (3d Cir. July 30, 2014) ("the availability of class arbitration is a 'question of arbitrability' for a court to decide unless the parties unmistakably provide otherwise"); *Reed Elsevier, Inc. v. Crockett,* 734 F.3d 594, 598 (6th Cir. 2013) ("the question whether an arbitration agreement permits classwide arbitration is a gateway matter, which is reserved 'for judicial determination unless the parties clearly and unmistakably provide otherwise'").

[6] In *Concepcion*, the Supreme Court also discussed at length that class arbitration itself is inconsistent with the fundamental attributes of arbitration as contemplated by the FAA. *Id.* at 1750-51.  In particular, the Court stated that the switch from bilateral to class arbitration sacrificed the principal advantage of arbitration – its informality – and rendered the process slower and more costly. *Id.* at 1751-52.  Class arbitration also requires procedural formality, and the Court stated that it was unlikely Congress meant to leave the disposition of those procedural requirements to an arbitrator. *Id.*  Finally, the Court opined that arbitration was poorly suited to the higher stakes of class litigation and greatly increased the risks to defendants, particularly given the absence of multilayered judicial review. *Id.* at 1752.

and reiterated yet again that federal courts "must rigorously enforce" arbitration agreements according to their terms, including terms that "specify with whom [the parties] choose to arbitrate their disputes," even if the plaintiff's cost of individually arbitrating a claim exceeds the potential individual recovery. *Id.* at 2311-12. In doing so, the Supreme Court cited its prior decision in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991), a case brought under the Age Discrimination in Employment Act, a federal statute that expressly incorporates the procedures of the FLSA, which is at issue in this case, stating: "In *Gilmer* . . . we had no qualms in enforcing a class waiver in an arbitration agreement even though the federal statute at issue . . . expressly permitted collective actions." *Id.* at 2311.

The Second Circuit has followed this precedent, as it must, recently holding that an arbitration clause permissibly foreclosed class-wide arbitration of the plaintiffs' FLSA wage and hour claims in *Sutherland v. Ernst & Young LLP,* 726 F.3d 290 (2d Cir. 2013). In that case, the Second Circuit reversed the district court's denial of an employer's motion to compel arbitration of individual FLSA and NYLL claims, holding that an employee's right to proceed collectively under the FLSA can be waived in an arbitration agreement. (*Id.,* at 296 [citing cases]). *See also Raniere v. Citigroup Inc.,* 533 Fed. Appx. 11 (2d Cir. 2013) (district court erred in concluding that "a waiver of the right to proceed collectively under the FLSA is unenforceable as a matter of law").

Likewise, district courts in this Circuit routinely uphold class and collective action waivers. *See Ryan,* 2013 U.S. Dist. LEXIS 24628, at **9-10 (enforcing class arbitration waiver in FLSA case, and granting defendant's motion to dismiss and compel arbitration

of plaintiff's claim on an individual basis); *Torres*, 2013 U.S. Dist. LEXIS 14200, at *19 ("neither the plain language of the FLSA nor its relevant legislative history evidences a congressional intent to preclude employees from waiving their right to bring their FLSA claims as part of a collective action," and compelling arbitration of plaintiff's claims on an individual basis); *Dixon,* 947 F. Supp. 2d at 403 ("This Court joins the vast majority of courts in holding that the right to proceed collectively under the FLSA can be waived in an arbitration agreement."); *Powell v. BJ's Wholesale Club, Inc.*, No. 3:14-cv-00081 (D. Conn. August 13, 2014), at p. 11 (enforcing class waiver in FLSA case, and compelling plaintiffs to arbitrate their claims on an individual basis).

Here, there can be no question that the parties agreed to arbitrate claims on an individual basis only and to preclude class or collective treatment.   The Arbitration Program expressly, and in bold print, says as much:

> **CAN CLAIMS BE DECIDED BY CLASS OR COLLECTIVE ACTION?**
>
> **No.   This section describes the "Class Action Waiver" of the Program.   Claims under this Program cannot be litigated by way of class or collective action.   Nor may Claims be arbitrated by way of a class or collective action. All Claims between you and us must be decided individually.   This means that, notwithstanding any other provision of this Program, if you or we elect to arbitrate a Claim, neither you nor we will have the right, with respect to that Claim, to do any of the following in court or before an arbitrator under this Program:**
>
> - **obtain relief from a class action or collective action, either as a class representative, class member or class opponent;**
> - **act as a private attorney general; or**

- **join or consolidate your Claim with the Claims of any other person.**

(McPeak Decl., Ex. 10, p. 66 [emphasis in original]).

In sum, Raymour & Flanigan is entitled to an order compelling Plaintiff to submit her individual claims, and only her individual claims, to arbitration.

## III.  THE COURT SHOULD DISMISS PLAINTIFF'S COMPLAINT WITHOUT PREJUDICE TO HER ABILITY TO PURSUE SUCH COMPENSATION- OR EMPLOYMENT-RELATED CLAIMS AS SHE MAY HAVE IN ARBITRATION.

Courts in this Circuit consistently dismiss plaintiffs' claims that are subject to an arbitration agreement.  *See Isaacs v. OCE Business Services,* 13 Civ. 0548, NYLJ 1202619558076, at *6 (S.D.N.Y. Sept. 4, 2013); *Litvinov,* 2014 U.S. Dist. LEXIS 36237, at *12 (compelling arbitration and dismissing the complaint); *Thomas,* 957 F. Supp. 2d at 500 (same); *Martin*, 296 F. Supp. 2d at 470 (same); *Brown,* 2009 U.S. App. LEXIS 13154, at *6 ("Defendant's motion to dismiss [employee's] complaint and to compel arbitration was properly granted by the District Court"); *Ryan,* 924 F. Supp. 2d at 562 ("If the Court finds the arbitration agreement is valid, and the claim is arbitrable, the Court may dismiss the case and order the parties to arbitrate"); *Torres,* 920 F. Supp. 2d at 379 ("defendants' motion to compel arbitration is granted and the case is dismissed"); *Powell,* No. 3:14-cv-00081, at p. 11 ("The second circuit, however, has recognized that if the court determines all of the claims to be arbitrable, the court may dismiss the case rather than issue a stay").

Here, all of Plaintiff's claims are subject to arbitration on an individual basis, as set forth, *supra.*   Accordingly, this Court should compel Plaintiff to arbitrate her

individual claims, and dismiss the Complaint without prejudice to Plaintiff's ability to pursue her claims in arbitration.   Should the Court decline to dismiss Plaintiff's Complaint outright, the Court should stay the current proceedings pending arbitration pursuant to 9 U.S.C. §§ 3, 4.

## IV.   THE CLAIMS OF ANY INDIVIDUALS WHO HAVE FILED A CONSENT FORM, OR WHO OPT IN WHILE THIS MOTION IS *SUB JUDICE*, SHOULD BE DISMISSED WITHOUT PREJUDICE.

As of the date of this filing, one other individual has "opted in" to this action by filing a consent form.  Since Plaintiff must arbitrate her claims on an individual basis, and since her Complaint is dismissed for the reasons set forth, *supra*, there will no longer be an action pending that opt-in plaintiffs may join.  Accordingly, this Court should dismiss without prejudice the claims of any individuals who have filed a consent form, or who opt in to this litigation while this motion is *sub judice*.  *See, e.g., Franco v. Allied Interstate LLC*, 2014 U.S. Dist. LEXIS 47077, at *6-7 (April 2, 2014) ("mootness of a named plaintiff's individual claim renders a collective action requesting statutory damages under the Fair Labor Standards Act (FLSA) moot even prior to certification" and "if the claims of the named plaintiffs become moot prior to class certification, the entire action becomes moot").[7]

---

[7] Any opt-in plaintiffs are, of course, free to assert their own claims, in their own suits, despite the fact that Plaintiff is required to arbitrate her own, individual, claims. But, to the extent such opt-in plaintiffs are subject to their own individual arbitration agreements – such as David J. Ambrose, who like Plaintiff, acknowledged receipt of the Arbitration Program on February 2, 2012, acknowledged receipt of the revised Arbitration Program on April 26, 2013, and agreed to arbitrate all employment-related and compensation-related claims by continuing to work for Raymour & Flanigan for 15 months thereafter – such individuals should similarly be compelled to arbitrate their claims on an individual basis, in accordance with their respective arbitration agreements. (McPeak Decl., Exs. 13-17).

## CONCLUSION

For the all the foregoing reasons, Raymour & Flanigan respectfully requests that this Court compel Plaintiff to arbitrate her claims on an individual basis, dismiss her claims without prejudice, and dismiss the claims of any opt-in plaintiffs without prejudice as well.

Date:   September 8, 2014
        New York, New York

                                        *s/ David M. Wirtz*
                                        _____
                                        David M. Wirtz
                                        LITTLER MENDELSON, P.C.
                                        900 Third Avenue
                                        New York, NY 10022-3298
                                        212.583.9600

                                        *Attorneys for Defendant*
                                        *Raymours Furniture Company, Inc.*