**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Michael J. Scimone
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000

**FITAPELLI & SCHAFFER**
Joseph A. Fitapelli
Brian Scott Schaffer
Eric Joshua Gitig
475 Park Avenue South, 12th Floor
New York, NY 10016
Telephone: (212) 300-0375

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

CONNIE PATTERSON, on behalf herself and
all others similarly situated,

Plaintiff,

v.

RAYMOURS FURNITURE COMPANY, INC.,

Defendant.

No. 14 Civ. 5882 (VEC)

**ORAL ARGUMENT REQUESTED**

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL ARBITRATION OF PLAINTIFF'S
INDIVIDUAL CLAIMS AND TO DISMISS THE COMPLAINT**

## <u>TABLE OF CONTENTS</u>

PAGE(S)

INTRODUCTION ........................................................................................................ 1

FACTUAL BACKGROUND ...................................................................................... 2

PROCEDURAL HISTORY ......................................................................................... 4

ARGUMENT .............................................................................................................. 4

     I.     Raymour & Flanigan Did Not Create a Valid Contract to Arbitrate ..................... 4

          A.     New York Law Distinguishes Between Policies Contained in an Employee Handbook and Contractual Obligations .................................... 5

               1.     The Handbook is Not a Contract ...................................................... 6

               2.     The Arbitration Program is Not a Contract .................................... 9

          B.     Defendant's Cases Are Inapposite ............................................................ 10

     II.    Patterson has a Substantive Right Under Federal Law to Pursue Her Claims in a Class or Collective Action .............................................................. 12

          A.     The Employment Arbitration Program Carves Out Rights Protected by the National Labor Relations Act ....................................................... 13

          B.     The Class Action Waiver Violates Federal Substantive Law ................... 15

CONCLUSION .......................................................................................................... 19

# TABLE OF AUTHORITIES

PAGE(S)

CASES

*In re 127 Rest. Corp.*,
331 N.L.R.B. 269 (2000) ........................................................................14

*Alvarez v. Coca-Cola Refreshments, USA, Inc.*,
914 F. Supp. 2d 256 (E.D.N.Y. 2012) .......................................................11

*Applied Energetics, Inc. v. NewOak Capital Markets, LLC*,
645 F.3d 522 (2d Cir. 2011).......................................................................5

*AT&T Mobility LLC v. Concepcion*,
131 S. Ct. 1740 (2011)........................................................................16, 18

*Baron v. Port Auth. of New York & New Jersey*,
271 F.3d 81 (2d Cir. 2001).........................................................................6

*Beletsis v. Credit Suisse First Boston, Corp.*,
No. 01 Civ. 6266, 2002 WL 2031610 (S.D.N.Y. Sept. 4, 2002) ...........................10

*Brady v. Nat'l Football League*,
644 F.3d 661 (8th Cir. 2011) ....................................................................14

*Brown v. Citicorp Credit Servs.*,
No. 12 Civ. 62, 2013 WL 645942 (D. Idaho Feb. 21, 2013)....................................15

*Brown v. Coca-Cola Enterprises, Inc.*,
No. 08 Civ. 3231, 2009 WL 1146441 (E.D.N.Y. Apr. 28, 2009)..........................10

*Brown v. St. Paul Travelers Companies*,
559 F. Supp. 2d 288 (W.D.N.Y. 2008) .......................................................11

*Brown v. St. Paul Travelers Companies, Inc.*,
331 F. App'x 68 (2d Cir. 2009) .................................................................11

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2006)..................................................................................8

*Chanchani v. Salomon/Smith Barney, Inc.*,
No. 99 Civ. 9219, 2001 WL 204214 (S.D.N.Y. Mar. 1, 2001) .............................11

*CompuCredit Corp. v. Greenwood*,
132 S. Ct. 665 (2012)..........................................................................15, 18

*Curry v. Volt Info. Sciences, Inc.*,
    No. 07 Civ. 7158, 2008 WL 719214 (S.D.N.Y. Mar. 18, 2008) ............................................12

*In re D.R. Horton, Inc.*,
    357 N.L.R.B. No. 184 (Jan. 3, 2012) ....................................................................13,14, 15, 17

*Dellefave v. Access Temporaries, Inc.*,
    37 F. App'x 23 (2d Cir. 2002) ........................................................................................6, 8

*Dixon v. NBCUniversal Media, LLC*,
    947 F. Supp. 2d 390 (S.D.N.Y. 2013)...................................................................................10

*Eastex, Inc. v. NLRB*,
    437 U.S. 556 (1978).................................................................................................13, 17

*Fiveco, Inc. v. Haber*,
    11 N.Y.3d 140 (2008) .......................................................................................5, 6, 10

*Flores v. Lower E. Side Serv. Ctr., Inc.*,
    4 N.Y.3d 363 (2005) ..................................................................................................9

*Genesco, Inc. v. T. Kakiuchi & Co.*,
    815 F.2d 840 (2d Cir. 1987)...........................................................................................1, 4

*Gibson v. Neighborhood Health Clinics, Inc.*,
    121 F.3d 1126 (7th Cir.1997) .......................................................................................7

*Graff v. Billet*,
    64 N.Y.2d 899 (1985) ...................................................................................................9

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
    561 U.S. 287 (2010)..................................................................................................4

*Grant v. Convergys*,
    No. 12 Civ. 496, 2013 WL 781898 (E.D. Mo. Mar. 1, 2013) .................................................15

*U.S. ex rel. Harris v. EPS, Inc.*,
    No. 05 Civ. 212, 2006 WL 1348173 (D. Vt. May 16, 2006)............................................11, 12

*Hergenreder v. Bickford Senior Living Grp., LLC*,
    656 F.3d 411 (6th Cir. 2011) ........................................................................................7

*Herrington v. Waterstone Mortg. Corp.*,
    No. 11 Civ. 779, 2012 WL 1242318 (W.D. Wis. Mar. 16, 2012) ..........................................15

*Heurtebise v. Reliable Bus. Computers, Inc.*,
    452 Mich. 405, 550 N.W.2d 243 (Mich. 1996) ..........................................................7

*Hickey v. Brinker Int'l Payroll Co., L.P.*,
   No. 13 Civ. 951, 2014 WL 622883 (D. Colo. Feb. 18, 2014) ................................................15

*Howard v. Nitro-Lift Technologies, L.L.C.*,
   273 P.3d 20 (Okla. 2011) ........................................................................................................8

*Jain v. McGraw-Hill Companies, Inc.*,
   827 F. Supp. 2d 272 (S.D.N.Y. 2011) *aff'd,* 506 F. App'x 47 (2d Cir. 2012).........................6

*Kaiser Steel Corp. v. Mullins*,
   455 U.S. 72 (1982).................................................................................................................13

*Leviton Mfg. Co. v. NLRB*,
   486 F.2d 686 (1st Cir. 1973) .................................................................................................14

*Litvinov v. UnitedHealth Grp. Inc.*,
   No. 13 Civ. 8541, 2014 WL 1054394 (S.D.N.Y. Mar. 11, 2014) ..........................................10

*Maas v. Cornell University*,
   94 N.Y.2d 87 (1999) .......................................................................................................6, 7, 8

*Martin v. S. Container Corp.*,
   92 A.D.3d 647 (N.Y. App. Div. 2012) ...............................................................................5, 11

*Meyers Indus., Inc.*,
   281 N.L.R.B. 882 (1986) .......................................................................................................14

*Morton v. Mancari*,
   417 U.S. 535 (1974)..........................................................................................................16, 18

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*,
   460 U.S. 1 (1983)...................................................................................................................17

*Nitro-Lift Technologies, LLC v. Howard*,
   133 S. Ct. 500 (2012)...............................................................................................................8

*Patterson v. Tenet Health Care, Inc.*,
   113 F.3d 832 (8th Cir. 1997) ...................................................................................................8

*Peterson v. Beale*,
   No. 92 Civ. 5412, 1995 WL 479425 (S.D.N.Y. Aug. 11, 1995) ...............................................5

*Posadas v. Nat'l City Bank of N.Y.*,
   296 U.S. 497 (1936)................................................................................................................16

*Raymours Furniture Co. v. Rossi*,
   No. 13 Civ. 4440, 2014 WL 36609 (D.N.J. Jan. 2, 2014) ...........................................2, 4, 7, 10

*Rent-A-Ctr., W., Inc. v. Jackson*,
　　561 U.S. 63 (2010) ................................................................................................4

*Sharkey v. J.P. Morgan Chase & Co.*,
　　No. 10 Civ. 3824, 2011 WL 135026 (S.D.N.Y. Jan. 14, 2011) .................................6

*Silver v. N.Y. Stock Exch.*,
　　373 U.S. 341 (1963) ..............................................................................................16

*SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharm., Inc.*,
　　211 F.3d 21 (2d Cir. 2000) .............................................................................16, 17

*Sure-Tan, Inc. v. NLRB*,
　　467 U.S. 883 (1984) ..............................................................................................14

*Sutherland v. Ernst & Young LLP*,
　　726 F.3d 290 (2d Cir. 2013) ...........................................................................14, 15

*Thomas v. Pub. Storage, Inc.*,
　　957 F. Supp. 2d 496 (S.D.N.Y. 2013) ....................................................................10

*United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*,
　　363 U.S. 574 (1960) ..............................................................................................17

*Vornado Air Circulation Systems, Inc. v. Duracraft Corp.*,
　　58 F.3d 1498 (10th Cir. 1995) ..............................................................................16

*Zenith Electronics Corp. v. Exzec, Inc.*,
　　182 F.3d 1340 (Fed. Cir. 1999) .............................................................................18

## STATUTES

29 U.S.C. § 151 ............................................................................................................17

29 U.S.C. § 157 ............................................................................................................13

National Labor Relations Act § 7 ...........................................................................14, 15

## OTHER AUTHORITIES

U.S. Const. art. VI, cl. 2 .............................................................................................18

## INTRODUCTION

Plaintiff brought this lawsuit to challenge Defendant's unlawful practices of failing to pay its sales people overtime and unfairly and deceptively calculating the commissions that Plaintiff and other salespeople earned selling Defendant's furniture. Defendant misclassified all sales people as exempt from the overtime protections of the FLSA and NYLL, and failed to compensate these workers with the proper overtime premiums for hours worked in excess of 40 per workweek. Additionally, Defendant told its salespeople that their commission would be calculated based on Defendant's "gross profit" on each item sold. ECF No. 1, ¶ 8. In fact, Defendant did not calculate its salespeople's commissions based on "gross profit," but instead made a number of deductions for expenses before arriving at a figure based on which it calculated commissions. *Id.* ¶ 10. This decreased salespeople's earnings significantly. *Id.*

This case is perfect for class treatment because Defendant's overtime and commission policies affected all salespeople the same way. One court should determine whether Defendant violated the law and, if it did, order it to compensate all of its salespeople for their losses. Instead of defending its policy head-on, however, Defendant seeks to avoid most of its liability (and reap a huge windfall) by forcing each salesperson to challenge it individually in a separate arbitration proceeding, expecting that very few salespeople will have the motivation or the means to do so. Defendant's motion to compel arbitration, ECF No. 14, is the final step in this plan.

The Court should deny Defendant's motion to compel arbitration for two reasons. First, the Federal Arbitration Act ("FAA") precludes the Court from enforcing Defendant's Employment Arbitration Program (the arbitration provision at issue here). The FAA only allows a court to force a party to arbitrate her claims if there is a valid contract to arbitrate. *See Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844-45 (2d Cir. 1987). Here, neither the

Employment Arbitration Program nor the Associate Handbook, where the Employment

Arbitration Program is set forth, is a contract that can be enforced under New York contract law.

In fact, in the Associate Handbook, Defendant took pains to avoid any misunderstanding about

its *non-contractual* nature, clearly stating that it did not bind Plaintiff or Defendant in any way.

Declaration of Stephen McPeak, ECF No. 1 ("McPeak Decl.") Ex. 10, p. 5.  Likewise, the

Employment Arbitration Program itself is clear that it "**is not a contract of employment**."  *Id*.,

p. 58 (emphasis in original).  For this reason, a New Jersey federal court recently rejected

Defendant's effort to force another employee out of federal court under the exact same

arbitration provision.  *See Raymours Furniture Co. v. Rossi*, No. 13 Civ. 4440, 2014 WL 36609,

at *7 (D.N.J. Jan. 2, 2014), appeal dismissed (May 8, 2014).  The Court should follow the well-

reasoned opinion in *Rossi*.

　　　Second, even if a valid arbitration agreement exists (which it does not), the Employment

Arbitration Program does not cover Plaintiff's class and collective action claims because it

explicitly carves out rights that exist under the National Labor Relations Act ("NLRA").  Under

the NLRA, an employee has the right to pursue concerted litigation through a class or collective

action.

　　　Finally, even if the Court does not find that the Employment Arbitration Program carves

out class and collective actions, it should hold that the Employment Arbitration Program itself is

illegal under the NLRA because it unlawfully limits concerted activity.

## FACTUAL BACKGROUND

　　　On June 20, 2005, when Plaintiff Connie Patterson began working for Defendant, she

was required to sign a new hire form.  McPeak Decl. Ex. 1.  The form contained an

acknowledgment that stated,

> I understand that the rules, regulations, procedures and benefits contained [in the Associate Handbook] are not promissory or contractual in nature and are subject to change by the company.

*Id.*  In October 2009, Defendant updated the Associate Handbook.  McPeak Decl. ¶ 6.

Defendant again distributed an acknowledgment that it asked employees to sign.  McPeak

Decl. Ex. 2.  This form stated, "I understand that nothing in this Handbook constitutes a

contract or promise of continued employment."  *Id.*

Defendant updated its Associate Handbook again on February 1, 2012.  McPeak Decl. ¶

13.  By this time, the 70-plus page Associate Handbook had been uploaded to an electronic

portal that employees were able to access from their computer desktops.  *Id.* ¶¶ 7-9.  The

February 2012 Associate Handbook included, for the first time, the arbitration provision at issue

here.  *Id.* ¶ 13.  The email sent to Defendant's employees about the changes to the Associate

Handbook referred to the arbitration provision as the "Employment Arbitration Program."

McPeak Decl. Ex. 7.

The Associate Handbook continued to emphasize that nothing in it created any

contractual rights.   On page 5, in an introductory section, it stated in boldfaced type,

> **Nothing in this Handbook, or any other Company practice or communication or document, including benefit plan descriptions, creates a promise of continued employment, employment contract, term or obligation of any kind on the part of the Company.  No manager or associate of the Company has the authority to make promises or statements to the contrary.**

McPeak Decl. Ex. 10, p. 5 (emphasis in original).

The Employment Arbitration Program itself, which begins on page 58 of the Associate

Handbook, contains a similar disclaimer.  Although it purports to be "an essential element of

your continued employment with [Defendant]," and a "condition of your employment," it also

disclaims contractual obligations, stating that the Employment Arbitration Program "**is not a**

3

**contract of employment . . . .**" *Id.* p. 58 (emphasis in original).  The Employment Arbitration

Program itself is not described in contractual terms and is not structured like a contract.  It is

instead presented in an informational question-and-answer format.  *Id.* pp. 58-67.  It is situated in

the Associate Handbook between Raymour & Flanigan's computer use policies and its operating

standards for matters such as building access, business travel, and usage of company vehicles.

*Id.* pp. 56-57; 68.  It is not described as an "agreement" but as a "program."

## PROCEDURAL HISTORY

Patterson filed this class and collective action lawsuit on July 30, 2014.  ECF No. 1, ¶ 1.

On August 6, 2014, David Ambrose joined this lawsuit as an opt-in Plaintiff.  ECF No. 6.

Like Patterson, Ambrose signed multiple acknowledgments throughout his employment

indicating that the Associate Handbook was not a contract and did not contain any contractual

terms, beginning in 2002.  McPeak Decl. Exs. 13, 14.

## ARGUMENT

**I.     Raymour & Flanigan Did Not Create a Valid Contract to Arbitrate.**

The Federal Arbitration Act "reflects the fundamental principle that arbitration is a matter

of contract," *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010), and "strictly a matter of

consent[.]" *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) (internal

quotation marks omitted).  Accordingly, a court considering a motion to compel arbitration

"must determine whether the parties agreed to arbitrate." *Genesco, Inc. v. T. Kakiuchi & Co.*,

815 F.2d 840, 844 (2d Cir. 1987).  Earlier this year, a New Jersey federal court considering the

exact arbitration provision at issue here determined that it was not a valid agreement to arbitrate

because of its "expansive" disclaimers. *See Raymours Furniture Co.*, 2014 WL 36609, at *7.

4

"[I]n deciding whether a contractual obligation to arbitrate exists, courts should generally apply state-law principles that govern the formation of contracts." *Applied Energetics, Inc. v. NewOak Capital Markets, LLC*, 645 F.3d 522, 526 (2d Cir. 2011) (internal quotation marks omitted). Therefore, New York law guides the analysis of whether the Employment Arbitration Program is a valid contract to arbitrate.

The Employment Arbitration Program is not a valid contract to arbitrate. Under New York law, "it is well settled that a party . . . may not be compelled to arbitrate its dispute with another unless the evidence establishes the parties' clear, explicit and unequivocal agreement to arbitrate." *Fiveco, Inc. v. Haber*, 11 N.Y.3d 140, 144 (2008) (internal quotation marks omitted). New York law requires that the parties' intention to form an arbitration agreement "must be affirmatively established." *Peterson v. Beale*, No. 92 Civ. 5412, 1995 WL 479425, at *3 (S.D.N.Y. Aug. 11, 1995). This is consistent with federal common law, which holds that "while doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made." *Applied Energetics,* 645 F.3d at 526.

## A.   New York Law Distinguishes Between Policies Contained in an Employee Handbook and Contractual Obligations.

A long line of New York cases establishes unequivocally that "[r]outinely issued employee manuals, handbooks and policy statements should not lightly be converted into binding employment agreements . . . especially in light of conspicuous disclaiming language." *Martin v. S. Container Corp.*, 92 A.D.3d 647, 648-49 (N.Y. App. Div. 2012) *leave to appeal dismissed in part, denied in part,* 19 N.Y.3d 839 (2012), (*quoting Lobosco v New York Tel. Co./NYNEX*, 96 N.Y.2d 312, 317 (2001)).

Moreover, courts routinely dismiss breach of contract claims based on provisions in

employee handbooks where the handbooks contain disclaimers like Defendant's disclaimers here. *See, e.g., Dellefave v. Access Temporaries, Inc.*, 37 F. App'x 23, 27 (2d Cir. 2002) (district court properly dismissed breach-of-contract claim where handbook's disclaimer prevented any valid contract from being formed); *Baron v. Port Auth. of New York & New Jersey*, 271 F.3d 81, 86 (2d Cir. 2001) (disclaimer stating that handbook did not "impose any standards or obligations" rendered handbook non-binding, and holding that "[n]o understanding by the plaintiffs to the contrary would have been objectively reasonable."); *Jain v. McGraw-Hill Companies, Inc.*, 827 F. Supp. 2d 272, 279 (S.D.N.Y. 2011) *aff'd,* 506 F. App'x 47 (2d Cir. 2012) (holding that "numerous, explicit disclaimers" in handbook precluded it "from serving as the basis for a binding contract."); *Sharkey v. J.P. Morgan Chase & Co.*, No. 10 Civ. 3824, 2011 WL 135026, at *9 (S.D.N.Y. Jan. 14, 2011) (dismissing breach-of-contract claim in light of disclaimer stating that employee handbook was not a contract).

The Associate Handbook as a whole and the Employment Arbitration Program itself contain explicit disclaimers that they do not create contractual obligations. These repeated statements cannot, as a matter of New York law, form a "clear, explicit and unequivocal agreement to arbitrate." *Fiveco,* 11 N.Y.3d at 144.

### 1.     The Handbook is Not a Contract.

The disclaimer at page 5 of the Associate Handbook unequivocally states that "[n]othing in this Handbook, or any other Company . . . document . . . creates a promise of continued employment, employment contract, term or obligation of any kind . . . ." McPeak Decl. Ex. 10, p. 5. This statement is even more explicit than the handbook at issue in *Maas v. Cornell University*, 94 N.Y.2d 87, 94 (1999), where the New York Court of Appeals found that a similar handbook "nowhere reflected an intent that [its] provisions . . . would become terms of a

discrete, implied-in-fact agreement." The Court pointed out that the handbook at issue was "heavily informational in nature," and "clearly states that it can be altered at any time (impliedly unilaterally)[.]" *Id.* The Court concluded that these features were "hardly the harbinger of a legally binding set of arrangements." *Id.*

In many respects, the Associate Handbook is identical to the one in *Maas*. It states that it is "a useful reference guide for you and is intended for informational purposes only," and explicitly reserves to Defendant the right "to change or modify Company rules, policies, practices and procedures, as well as the contents of this Handbook at any time with or without advance notice and at [Defendant's] sole discretion." McPeak Decl. Ex. 10, p. 5. No part of the Handbook puts employees on notice that they are reading a contractually binding set of agreements. To the contrary, it instructs them that "[n]othing" contained in the Handbook should be given contractual weight, or constitutes a "term or obligation of any kind." *Id.* These express statements prevent the Employment Arbitration Program from forming a valid, binding contract under New York law.

In addition to the holding in *Rossi* that the disclaimers in Defendant's Associate Handbook preclude arbitration, other courts have held that arbitration agreements in employee handbooks are not enforceable when they contain similar disclaimers. *See, e.g., Gibson v. Neighborhood Health Clinics, Inc.,* 121 F.3d 1126, 1131–32 (7th Cir.1997) (arbitration clause in employee handbook was not enforceable where the handbook stated that it was not a contract); *Hergenreder v. Bickford Senior Living Grp., LLC*, 656 F.3d 411, 418 (6th Cir. 2011) (refusing to compel arbitration where employee handbook containing arbitration agreement stated it did "not constitute any contractual obligation"); *Heurtebise v. Reliable Bus. Computers, Inc.,* 452 Mich. 405, 550 N.W.2d 243, 247 (Mich. 1996) (no enforceable arbitration agreement was created

where handbook containing it stated that "the Policies specified herein do not create any employment or personal contract, express or implied").[1]

Defendant mischaracterizes the Supreme Court's decision in *Nitro-Lift Technologies, LLC v. Howard*, 133 S. Ct. 500 (2012), incorrectly arguing that the arbitration provision should be "severed" from the rest of the Associate Handbook. *Nitro-Lift* simply reiterated the Supreme Court's prior holdings that if a party to an arbitration agreement argues "fraud in the inducement of the arbitration clause itself—an issue which goes to the making of the agreement to arbitrate—the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006) (*quoting Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967).

This concept does not apply in this case because the Employee Arbitration Program is not part of a larger contract. Unlike in *Nitro-Lift*, where the parties agreed that the contract containing the arbitration agreement was in fact a formalized, validly formed contract, *see Howard v. Nitro-Lift Technologies, L.L.C.*, 273 P.3d 20, 24 (Okla. 2011), the Associate Handbook states clearly that it is not "a promise of continued employment, employment contract, term or obligation of any kind[.]" McPeak Ex. 10, p. 5; *Dellefave*, 37 F. App'x at 27. It is instead a nonbinding "reference guide" that was distributed with the Employment Arbitration Program. McPeak Ex. 10, p. 5.

---

[1]     Although the Eighth Circuit held in *Patterson v. Tenet Health Care, Inc.,* 113 F.3d 832 (8th Cir. 1997) that an arbitration agreement in an employee handbook was enforceable under Missouri law despite a prominent disclaimer, its decision turned on the fact that the arbitration agreement presented a "marked transition in language and tone" from the rest of the handbook. In contrast, the Employment Arbitration Program in Defendant's Associate Handbook is presented in an informational format that is similar to the rest of the Handbook. The New York Court of Appeals held in *Maas* that an employee handbook presented in such a "heavily informational" style was not a binding contract. *Maas*, 94 N.Y.2d at 94.

It is black letter law that "[i]n determining whether the parties entered into a contractual agreement and what were its terms, it is necessary to look . . . to the objective manifestations of the intent of the parties as gathered by their expressed words and deeds . . . ." *Flores v. Lower E. Side Serv. Ctr., Inc.*, 4 N.Y.3d 363, 368 (2005) (*quoting Brown Bros. Elex. Constrs. v. Beam Constr. Corp.*, 41 N.Y.2d 397, 399-400 (1977).  Here, the Employment Arbitration Program was presented to employees only as part of the 83-page Associate Handbook.  The Handbook, along with the acknowledgements that Defendant required employees to sign when they were hired, McPeak Ex. 1, and again each time the Handbook was updated, McPeak Exs. 2, 10, 13-14, forms part of the "words and deeds" that show that the parties did not intend to form a contract.[2]

## 2.     The Arbitration Program is Not a Contract.

Even if the Court were to disregard the content of the Associate Handbook – which it should not – the Employment Arbitration Program itself contains a similar disclaimer.  Although it states that "This Program is an essential element of your continued employment relationship . . . and is a condition of your employment[,]" it continues in the next sentence, "However, it is not a contract of employment and does not change your status as an at-will employee of Raymour & Flanigan."  McPeak Decl. Ex. 10, p. 58.  It is well established in New York that such ambiguities in a purported contract are to be construed against the drafter.  *See Graff v. Billet*, 64 N.Y.2d 899, 902 (1985).  The statement that the Employment Arbitration Program "is not a contract[,]" standing alone, creates ambiguity as to whether Defendant intended to create a contractual

---

[2]     Defendant itself relies on the context in which the Employment Arbitration Program was presented to employees to support its arguments.  By citing the emails, memoranda, and acknowledgements provided to Patterson along with the Employment Arbitration Program as part of its motion, Defendant seeks to persuade the Court that Plaintiff "entered into a valid arbitration agreement" and "manifest[ed] her agreement" to contractual terms.  Def's Mot. 11-12.

obligation.  Taken as a whole, the language does not establish a "clear, explicit and unequivocal agreement to arbitrate."  *Fiveco*, 11 N.Y.3d at 144.

In *Raymours Furniture Co.*, the court found that the above provision was "confusing and contradictory" in light of the broader disclaimer in the Associate Handbook.  2014 WL 36609, at *7-8.  Given this ambiguity, the court held that the employee "could not have agreed 'clearly and unambiguously to arbitrate.'"  *Id.* at *8.

### B.    Defendant's Cases Are Inapposite.

Defendant's argument that Plaintiff agreed to arbitrate by continuing to work after receiving notice of the Employment Arbitration Program relies on cases where the arbitration agreement was much more prominently presented to employees, under circumstances that affirmed – not disclaimed – its contractual nature.  *See Litvinov v. UnitedHealth Grp. Inc.*, No. 13 Civ. 8541, 2014 WL 1054394, at *2 (S.D.N.Y. Mar. 11, 2014) (arbitration agreement was contained in offer letter that stated that arbitration agreement was a "binding contract"); *Dixon v. NBCUniversal Media, LLC*, 947 F. Supp. 2d 390, 393-94 (S.D.N.Y. 2013) (arbitration agreement was specifically announced in multiple emails that contained a link to a stand-alone document); *Thomas v. Pub. Storage, Inc.*, 957 F. Supp. 2d 496, 498 (S.D.N.Y. 2013) (arbitration agreement presented as a stand-alone document); *Beletsis v. Credit Suisse First Boston, Corp.*, No. 01 Civ. 6266, 2002 WL 2031610, at *1 (S.D.N.Y. Sept. 4, 2002) (arbitration agreement attached as stand-alone document to memo and also included in an employee handbook that did not disclaim intent to create a contract); *Brown v. Coca-Cola Enterprises, Inc.*, No. 08 Civ. 3231, 2009 WL 1146441, at *2-3 (E.D.N.Y. Apr. 28, 2009) (arbitration agreement was presented to employees in a meeting as a stand-alone document).  Because these agreements were not included in an employee handbook, they did not need to overcome the presumption under New York law that

10

employee handbooks do not create binding contracts.  *See Martin*, 92 A.D.3d at 648-49.  Even in

*Chanchani v. Salomon/Smith Barney, Inc.*, No. 99 Civ. 9219, 2001 WL 204214 (S.D.N.Y. Mar.

1, 2001), where the arbitration agreement was presented to employees only as part of an

employee handbook, there was no prominent disclaiming language like that at issue here.

Courts in this circuit have held that although New York recognizes contracts formed

through the parties' course of conduct, such as an employee continuing to work after receiving

clear notice of a change in employment terms, this doctrine must be balanced against the

requirement that agreements to arbitrate must be "clear, explicit, and unequivocal."  *See Alvarez*

*v. Coca-Cola Refreshments, USA, Inc.*, 914 F. Supp. 2d 256, 258 (E.D.N.Y. 2012) (ordering trial

to determine whether employee received clear notice of an arbitration agreement).  That

requirement is not met where the purported agreement is repeatedly presented with multiple

disclaimers stating that it is not a binding contract.

The disclaimer contained in *Brown v. St. Paul Travelers Companies, Inc.*, 331 F. App'x

68, 70 (2d Cir. 2009), on which Defendant relies, is distinguishable from the language at issue

here.  In *Brown*, the Second Circuit upheld a district court's decision to send a case to arbitration

despite a disclaimer in the employee handbook, but the district court's opinion turned on the fact

that the disclaimer was unclear.  The disclaimer in the *Brown* case stated only that the handbook

did "not constitute an express or implied contract of employment . . . ."  *Brown v. St. Paul*

*Travelers Companies*, 559 F. Supp. 2d 288, 292 (W.D.N.Y. 2008).  The district court

distinguished that language from the handbook disclaimer in *U.S. ex rel. Harris v. EPS, Inc.*,No.

05 Civ. 212, 2006 WL 1348173, at *5 (D. Vt. May 16, 2006), where an arbitration agreement

was held invalid because the handbook stated that "This Handbook does not constitute an

employment contract and is not intended to create contractual obligations *of any kind*."  *Brown*,

559 F. Supp. 2d at 292 (emphasis added).  The language in Defendant's Associate Handbook, which states that "[n]othing in this Handbook, or any other Company . . . document . . . creates a promise of continued employment, employment contract, term or obligation *of any kind* . . . ," McPeak Decl. Ex. 10, p. 5 (emphasis added), is more like the broad disclaimer in *Harris* than the narrow one in *Brown*.

In *Curry v. Volt Info. Sciences, Inc.*, No. 07 Civ. 7158, 2008 WL 719214 (S.D.N.Y. Mar. 18, 2008), the court did not reach the issue of whether a disclaimer in an employee handbook rendered the handbook unenforceable, but instead referred that issue to the arbitrator to decide. *Curry* does not apply to this case because the Employment Arbitration Program here expressly provides that a court, not an arbitrator, should decide "disputes about the validity, enforceability, coverage or scope of this Program or any part thereof (including, without limitation, the Class Action Waiver described below)."  McPeak Decl. Ex. 10, pp. 60-61.  In any event, unlike in *Curry*, the disclaimer here is not simply a provision of the Handbook, it is also present in the arbitration agreement itself.  *Id.* p. 58.

Like the employer in *Harris*, "[h]aving inserted these disclaimers in an apparent effort to avoid vesting [Patterson] with contractual *rights,* [Defendant] cannot conveniently choose to ignore them and argue that the Handbook imposed contractual *obligations* on [Patterson]." *Harris*, 2006 WL 1348173, at *5 (emphasis in original).

## II.     Patterson has a Substantive Right Under Federal Law to Pursue Her Claims in a Class or Collective Action.

Even if the Court concludes that the Employment Arbitration Program is a valid arbitration agreement, it should decline to enforce the class action waiver contained on page 66

of the Associate Handbook.  McPeak Ex. 10, p. 66.[3]  Employees covered by the National Labor

Relations Act ("NLRA") have a substantive right to engage in concerted activity for mutual aid

or protection, including participating with other employees in litigation over terms of

employment such as wages.  *See* 29 U.S.C. § 157 ("Employees shall have the right . . . to engage

in . . . concerted activities for the purpose of . . . mutual aid or protection"); *Eastex, Inc. v. NLRB*,

437 U.S. 556, 565-66 (1978) ("the 'mutual aid or protection' clause [of the NLRA] protects

employees . . . when they seek to improve working conditions through resort to administrative

and judicial forums"); *In Re D. R. Horton, Inc.*, 357 NLRB No. 184 (Jan. 3, 2012) (holding

employer's policy requiring individual arbitration of all employment disputes to be unlawful).

The Employment Arbitration Program specifically states that employees do "***not*** . . . waive any

rights [they] may have under the National Labor Relations Act . . . ."  McPeak Decl. Ex. 10, p.

61 (emphasis in original).  Thus, by its own terms, the Employment Arbitration Agreement does

not restrict Patterson's right to pursue her claims on a class or collective basis, either in court or

in arbitration.

　　　　Alternatively, this Court should hold that the class action waiver is unenforceable

because it is contrary to federal law.  *See Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 77 (1982)

(refusing to enforce agreement that violated the NLRA because there is "no doubt that illegal

promises will not be enforced in cases controlled by the federal law").

　　**A.**　　**The Employment Arbitration Program Carves Out Rights Protected by the**
　　　　　　**National Labor Relations Act.**

　　　　The Employment Arbitration Program clearly states that it does not require employees to

waive rights under the NLRA.  McPeak Decl. Ex. 10, p. 61.  Those rights include the right "to

---

[3]　　　The Employment Arbitration Program specifically provides that the Court, not an
arbitrator, should determine whether the class action waiver is enforceable.  McPeak Ex. 10, p.
61.

join together to bring employment-related claims on a classwide or collective basis in court or

before an arbitrator," which is protected by Section 7 of the NLRA.  *In re D.R. Horton, Inc.*, 357

N.L.R.B. No. 184, at *3 (Jan. 3, 2012), e*nforcement granted in part, denied in part, D.R. Horton,

Inc. v. N.L.R.B.*, 737 F.3d 344 (5th Cir. 2013); *see also In re 127 Rest. Corp.*, 331 N.L.R.B. 269,

275-76 (2000); *Meyers Indus.*, *Inc*., 281 N.L.R.B. 882, 887 (1986); *Brady v. Nat'l Football

League*, 644 F.3d 661, 673 (8th Cir. 2011) ("a lawsuit filed . . . by a group of employees to

achieve more favorable terms or conditions of employment *is* 'concerted activity' under

[Section] 7 of the National Labor Relations Act); *Leviton Mfg. Co. v. NLRB*, 486 F.2d 686, 689

(1st Cir. 1973) ("the filing of a labor related civil action by a group of employees is ordinarily a

concerted activity protected by [section] 7").  The National Labor Relations Board ("NLRB"),

the federal agency charged with enforcing the NLRA, has held that participating in class or

collective actions, regardless of whether employees are unionized, is "at the core of what

congress intended to protect by adopting the broad language of Section 7."  *D.R. Horton*, 357

N.L.R.B. No. 184, at *4.[4]

     In *Sutherland v. Ernst & Young LLP*, 726 F.3d 290 (2d Cir. 2013), the Second Circuit

stated in a footnote that it declined to follow *D.R. Horton*, stating that the decision was not

entitled to deference because it would "potentially trench upon federal statutes and policies

unrelated to the NLRA."  *Id.* at 297 n.8 (*quoting Hoffman Plastic Compounds, Inc. v. NLRB,*

U.S. 137, 144, 122 S.Ct. 1275, 152 L.Ed.2d 271 (2002)).  However, the Circuit's decision in

*Sutherland* did not overrule the well-settled rule that "a lawsuit filed in good faith by a group of

employees to achieve more favorable terms or conditions of employment *is* 'concerted activity'

under § 7 of the National Labor Relations Act."  *Brady*, 644 F.3d at 673 (collecting cases).  Put

---

[4]      The NLRB's interpretation of the NLRA in *D.R. Horton* is entitled to "considerable
deference."  *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 891 (1984).

another way, even if courts did not owe deference to the NLRB in cases involving arbitration agreements, here, unlike in *Sutherland*, the arbitration agreement's own terms defer to the NLRA.  The Court should therefore respect the parties' agreement and enforce it "according to [its] terms."  *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 669 (2012).

### B.     The Class Action Waiver Violates Federal Substantive Law.

The class action waiver is unenforceable under federal law even without regard to the parties' express intention to carve out NLRA rights.  In *D.R. Horton,* the NLRB held that an employer who requires an employee to "waive their right to collectively pursue employment-related claims in all forums, arbitral and judicial," violates Section 7 of the NLRA.  *Id.* at *17. Here, the class action waiver contained in the Employment Arbitration Program states that, "**Claims under this Program cannot be litigated by way of class or collective action.  Nor may Claims be arbitrated by way of a class or collective action.**"  McPeak Decl. Ex. 10, p. 66 (emphasis in original).  Enforcing this language by requiring individual arbitration of the claims here would eliminate all opportunities for Plaintiff and similarly situated employees to litigate collectively, thus violating Plaintiff's right to engage in concerted activity under Section 7.

Plaintiff acknowledges that only a handful of courts have followed *D.R. Horton*, *see Brown v. Citicorp Credit Servs.*, No. 12 Civ. 62, 2013 WL 645942, at *3-4 (D. Idaho Feb. 21, 2013); *Herrington v. Waterstone Mortg. Corp.*, No. 11 Civ. 779, 2012 WL 1242318, at *3-6 (W.D. Wis. Mar. 16, 2012), *upheld on reconsideration,* 993 F. Supp. 2d 940 (W.D. Wis. 2014); *Grant v. Convergys*, No. 12 Civ. 496, 2013 WL 781898, at *1, 4 (E.D. Mo. Mar. 1, 2013), and that many others have not.  *See, e.g., Hickey v. Brinker Int'l Payroll Co., L.P.*, No. 13 Civ. 951, 2014 WL 622883, at *2 (D. Colo. Feb. 18, 2014) (collecting cases).  Nevertheless, Plaintiff respectfully submits that the courts that have found that the FAA supersedes the NLRA have

failed to conduct the appropriate analysis called for by the Supreme Court's conflict-of-laws jurisprudence where two federal laws potentially conflict.

It is a longstanding "cardinal rule" of statutory construction that "repeals by implication are not favored." *Posadas v. Nat'l City Bank of N.Y.*, 296 U.S. 497, 503 (1936).  Federal courts "are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Morton v. Mancari*, 417 U.S. 535, 551 (1974).  Where two federal laws – such as the FAA and the NLRA – potentially conflict with one another, courts must adopt an interpretation that gives effect to both. *Id.*; *SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharm., Inc.*, 211 F.3d 21, 27-28 (2d Cir. 2000). If a conflict cannot be avoided, it must be minimized so that the underlying policies of both laws are given the greatest possible effect.  *See Silver v. N.Y. Stock Exch.*, 373 U.S. 341, 357 (1963). To the extent that one statute must give way to another, the purpose, structure, and history of the two laws should guide courts in deciding which law governs.  *Vornado Air Circulation Systems, Inc. v. Duracraft Corp.*, 58 F.3d 1498, 1507 (10th Cir. 1995).

One must search hard to find a conflict between the FAA and NLRA.  No part of the FAA says anything about employee concerted activity, class or collective proceedings in litigation, or any other subject that might implicate workers' rights to provide each other with mutual aid.  The idea that the FAA only contemplates individual arbitration is a judicial gloss applied by the Supreme Court in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1753 (2011), where the Court stated that class arbitration "is not arbitration as envisioned by the FAA."  *AT&T Mobility* concerned a consumer arbitration contract, not an employment agreement, so the protections of the NLRA were not implicated.

16

It is possible to resolve the NLRA and the FAA so as to "preserve[] the principal purposes of each." *SmithKline Beecham*, 211 F.3d at 28.  The NLRA's clearly stated policy is to "protect[] the exercise by workers of full freedom of association . . ." in order to facilitate "friendly adjustment of industrial disputes arising out of differences as to wages, hours, or other working conditions."  29 U.S.C. § 151.  The FAA, as the Supreme Court has stated, reflects a "liberal federal policy favoring arbitration agreements . . . ." as a form of dispute resolution. *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983).  Those two policies can and have been reconciled for decades without denying workers the substantive right to jointly "seek to improve working conditions through resort to administrative and judicial forums."  *Eastex, Inc. v. NLRB*, 437 U.S. 556, 565-66 (1978).

The NLRB's decision in *D.R. Horton* carefully analyzed the interplay between the FAA and the NLRA.  *D.R. Horton*, 357 N.L.R.B. No. 184, at *10-16.  Indeed, the NLRB expressly recognized that arbitration is "a central pillar of Federal labor relations policy."  *Id.* at *17.  This recognition is consistent with the long-recognized "congressional policy in favor of settlement of disputes by . . . the machinery of arbitration."  *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574 (1960).  While the NLRB's discussion of the FAA is not entitled to any administrative deference, it does reflect the kind of careful consideration and balancing of Congressional policies that is required by courts' obligation to give Congressional pronouncements equal effect.  Rather than declaring that all arbitration agreements containing a class action waiver are *per se* unenforceable, the NLRB tailored its holding to apply only to arbitration agreements that preclude workers from pursuing joint claims "in any forum, arbitral or judicial."  *Id.* at *1.  In other words, an employer may still validly require arbitration – thus effectuating the purpose of the FAA – so long as it respects the NLRA's protection of concerted

17

activity by not attempting to undermine workers' rights to engage in protected mutual aid in whatever forum the employer leaves open.  Adopting this analysis avoids any conflict between the FAA and the NLRA.

The Supreme Court's opinion in *AT&T Mobility* does not require a different result.  The issue in *AT&T Mobility* was federal preemption of a state law that "interfere[d]" with the federal policy favoring arbitration.  131 S. Ct. at 1749-50.  It is of course a fundamental aspect of constitutional law that laws enacted by Congress are "the supreme Law of the Land . . . any Thing in the . . . Laws of any State to the Contrary notwithstanding."  U.S. Const. art. VI, cl. 2. But it is equally fundamental that laws passed by Congress – rather than the states – have "equal standing [with one another], and equal claim for recognition."  *Zenith Electronics Corp. v. Exzec, Inc.*, 182 F.3d 1340 (Fed. Cir. 1999).  Federal laws require courts "to regard each as effective" and "give effect to both if possible," not "to pick and choose among [them.]"  *Morton*, 417 U.S. at 551 (internal quotation marks omitted).

The Supreme Court's decision in *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665 (2012), is not to the contrary.  *CompuCredit* concerned a different question – whether a federal statute that permitted a private right of action included a "congressional command" overriding the FAA's presumption that arbitration agreements covering those private rights of actions should be enforced.  *Id.* at 669.  In contrast, the NLRA does not provide a private right of action, and the question is not whether disputes under the NLRA may be arbitrated (they can be, and often are).  Rather, the issue in reconciling the NLRA with the FAA is whether the broad substantive right granted by the NLRA – to engage in concerted activity – can be harmonized with the federal policy favoring arbitration.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's

Motion to Compel Arbitration.


Dated:          October 6, 2014
                New York, New York

                                        Respectfully submitted,

                                        **OUTTEN & GOLDEN LLP**
                                        By:

                                        /s/ Justin M. Swartz
                                            Justin M. Swartz


                                        **OUTTEN & GOLDEN LLP**
                                        Justin M. Swartz
                                        Michael J. Scimone
                                        3 Park Avenue, 29th Floor
                                        New York, New York 10016
                                        Telephone:  (212) 245-1000

                                        **FITAPELLI & SCHAFFER**
                                        Joseph A. Fitapelli
                                        Brian Scott Schaffer
                                        Eric Joshua Gitig
                                        475 Park Avenue South, 12th Floor
                                        New York, NY 10016
                                        Telephone: (212) 300-0375