LITTLER MENDELSON, P.C.
Attorneys for Defendant
   Raymours Furniture Company, Inc.
900 Third Avenue
New York, NY  10022-3298
212.583.9600

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CONNIE PATTERSON, on behalf of herself and all others similarly situated,<br><br>　　　　　　　　Plaintiff,<br><br>　　　-against-<br><br>RAYMOURS FURNITURE COMPANY, INC.,<br><br>　　　　　　　　Defendant. | **14 Civ. 5882 (VEC)** |

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO COMPEL ARBITRATION OF PLAINTIFF'S INDIVIDUAL CLAIMS AND TO DISMISS THE COMPLAINT**

Of Counsel:
   David M. Wirtz

## **PRELIMINARY STATEMENT**

In her opposition, what Plaintiff does <u>not</u> do is deny or dispute any of the following:

- In 2009, she acknowledged having received the Associate Handbook; promised to become familiar with its terms and keep abreast of changes to Defendant's policies contained in the handbook; and confirmed that her continued employment with Defendant signified her <u>agreement</u> that all future changes would apply to her (Def. Mem. at 2-3)[1];

- In 2012, she received notice that an Employment Arbitration Program (the "Arbitration Program") had been added to the Associate Handbook (Opp. at 3; Def. Mem. at 4-5), and on at least two separate occasions, she acknowledged that she had accessed and reviewed the Arbitration Program (Def. Mem. at 5-6);

- The Arbitration Program expressly states that it is an "essential element of [Plaintiff's] continued employment relationship with Raymour & Flanigan and is a condition of [Plaintiff's] employment" (Def. Mem. at 6; Opp. at 3);

- Plaintiff remained employed by Defendant for almost three years after acknowledging receipt of the Arbitration Program (Def. Mem. at 13);

- "New York recognizes contracts formed through the parties' course of conduct, such as an employee continuing to work after receiving clear notice of a change in employment terms" (Opp. at 11);

- The Arbitration Program expressly covers Plaintiffs' FLSA and NYLL claims, which are arbitrable as a matter of law (Def. Mem. at 14-16); and

- Opt-in David J. Ambrose also twice acknowledged receipt of the Arbitration Program and continued to work for Raymour & Flanigan for months (Def. Mem. at 21, n. 7).[2]

What Ms. Patterson <u>does</u> do is cite out-of-state or inapposite case law, distort the unambiguous language of the Arbitration Program, and ask this Court to follow a decision of the National Labor Relations Board that the Second Circuit has rejected, all in an effort to avoid the well-settled New York law set forth in Defendant's moving brief.

---

[1] Defendant's Memorandum of Law in Support of Motion to Compel Arbitration of Plaintiff's Individual Claims and to Dismiss the Complaint is referred to herein as "Def. Mem."; Plaintiff's Memorandum of Law in Opposition to Def. Mem. is referred to herein as "Opp."

[2] On October 27, 2014, Defendant received a claim notice from Mr. Ambrose dated September 25, 2014 "to notify Raymour & Flanigan of [his] claims against the company" and of his intention to pursue his claims in arbitration. Mr. Ambrose's claims include those set forth in this action, and his initiation of the arbitration procedure is what he agreed to do and should have done in the first place. (Declaration of Edward Groh, Ex. A).

**ARGUMENT**

I.   **PLAINTIFF RELIES PRINCIPALLY ON IRRELEVANT CASE LAW.**

Ms. Patterson concedes that "New York law guides the analysis of whether the Employment Arbitration Program is a valid contract to arbitrate," and that the U.S. Supreme Court has repeatedly directed federal courts to construe arbitration clauses as broadly as possible, resolving any doubts in favor of arbitration. (Opp. at 5, 17; Def. Mem. at 14.). What she relies upon are administrative decisions and decisions from the courts in other jurisdictions to attack Defendant's Arbitration Program. (Opp. at 2, 4, 7-8, 10-18).[3/4] These decisions are neither binding on this Court nor persuasive. New York law is clear that arbitration agreements in employee handbooks are valid and binding, including handbooks that contain broad employment

---

[3] *Citing Raymours Furniture Co. v. Rossi,* No. 13 Civ. 4440, 2014 WL 36609 (D.N.J. Jan. 2, 2014); *Gibson v. Neighborhood Health Clinics, Inc.,* 121 F.3d 1126 (7th Cir. 1997); *Hergenreder v. Bickford Senior Living Grp., LLC,* 656 F.3d 411 (6th Cir. 2011); *Heurtebise v. Reliable Bus. Computers, Inc.,* 452 Mich. 405, 550 N.W.2d 243 (Mich. 1996); *Howard v. Nitro-Lift Tech., LLC,* 273 P.3d 20 (Okla. 2011); *Patterson v. Tenet Health Care, Inc.,* 113 F.3d 832 (8th Cir. 1997); *U.S. ex rel Harris v. EPS, Inc.,* No. 05 Civ. 212, 2006 WL 1348173 (D. Vt. May 16, 2006); *In re D.R. Horton, Inc.,* 357 NLRB 184 (Jan. 3, 2012); *D.R. Horton, Inc. v. NLRB,* 737 F.3d 344 (5th Cir. 2013); *In re 127 Rest. Corp.,* 331 NLRB 269 (2000); *Meyers Indus., Inc.,* 281 NLRB 882 (1986); *Brady v. Nat'l Football League,* 644 F.3d 661 (8th Cir. 2011); *Leviton Mfg. Co. v. NLRB,* 486 F.2d 686 (1st Cir. 1973); *Brown v. Citicorp Credit Servs.,* No. 12 Civ. 62, 2013 WL 645942 (D. Idaho Feb. 21, 2013); *Herrington v. Waterstone Mortg. Corp.,* No. 11 Civ. 779, 2012 WL 1242318 (W.D. Wis. Mar. 16, 2012); *Grant v. Convergys,* No. 12 Civ. 496, 2013 WL 781898 (E.D. Mo. Mar. 1, 2013); *Hickey v. Brinker Int'l Payroll Co., L.P.,* No. 13 Civ. 951, 2014 WL 622883 (D. Colo. Feb. 18, 2014); and *Vornado Air Circ. Sys., Inc. v. Duracraft Corp.,* 58 F.3d 1498 (10th Cir. 1995).

[4] Plaintiff makes much of *Raymours Furniture Co. v. Rossi,* No. 13 Civ. 4440, 2014 WL 36609 (D.N.J. 2014) (Opp. at 2, 4, 7, 10), but her reliance is misplaced. *Rossi* is controlled by New Jersey law, and heavily relies on two New Jersey Supreme Court decisions that are inapplicable here. *Id.* at *6. Moreover, the *Rossi* court acknowledges that New Jersey law, unlike controlling New York law, does not (yet) recognize the principle that an employee's receipt of the handbook and continued employment constitutes an agreement to abide by the arbitration policy in the handbook when an arbitration policy is made a condition of employment. *Id.* at *6; *see also Manigault v. Macy's East, LLC.,* 318 Fed. Appx. 6, 8 (2d Cir. 2009) (distinguishing New York law from the New Jersey decision on which *Rossi* relies). Moreover, *Rossi* is an outlier. At least two other federal courts have **upheld** Raymour & Flanigan's Arbitration Program in reported decisions that do not appear in Plaintiffs' opposition. *See Daniels v. Raymours Furniture Co., Inc.,* 2014 WL 1338151 (D. Mass. March 31, 2014) (rejecting employee's argument that there was no valid and binding agreement to arbitrate and granting Raymour & Flanigan's motion to compel arbitration); *Alexander v. Raymours Furniture Co., Inc.*, 2014 WL 3952944 (E.D. Pa. Aug. 13, 2014) (granting Raymour & Flanigan's motion to compel arbitration pursuant to the Arbitration Program).

2

contract disclaimers intended to emphasize employees' at-will status.[5]

## II.    AN ARBITRATION PROGRAM IN AN EMPLOYEE HANDBOOK IS BINDING UNDER NEW YORK LAW.

Ms. Patterson's argument that "neither the Employment Arbitration Program nor the Associate Handbook . . . is a contract that can be enforced under New York contract law" is premised largely upon her misplaced assertion that "the handbook is not a contract." (Opp. at 1-2, 5-9). It does not matter whether the *handbook* is a valid contract; it matters only whether the *arbitration agreement* in that handbook is valid and binding.[6] An "arbitration provision is severable from the remainder of the contract," and the Supreme Court has held as much in *Nitro-Lift Techs., LLC v. Howard,* 133 S. Ct. 500, 503 (2012), *citing Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 445 (2006).

Ms. Patterson attempts to distinguish *Nitro-Lift* by arguing that the Arbitration Program here "is not part of a larger contract" and that it applies only when a party argues fraud in the inducement. (Opp. at 8). She reads *Nitro-Lift* too narrowly. An arbitration provision, the

---

[5] **New York cases upholding validity of arbitration agreement in employee handbook:** *Brown v. St. Paul Travelers Cos.,* 331 Fed. Appx. 68 (2d Cir. 2009); *Manigault v. Macy's East, LLC,* 318 Fed. Appx. 6 (2d Cir. 2009); *Isaacs v. OCE Bus. Servs.,* 968 F. Supp. 2d 564 (S.D.N.Y. 2013); *Thomas v. Public Storage, Inc.,* 957 F. Supp. 2d 496 (S.D.N.Y. 2013); *Dixon v. NBCUniversal Media, LLC,* 947 F. Supp. 2d 390 (S.D.N.Y. 2013); *Brown v. St. Paul Travelers Co.,* 559 F. Supp. 2d 288 (W.D.N.Y. 2008); *Curry v. Volt Info. Svcs., Inc.,* 2008 U.S. Dist. LEXIS 20910 (S.D.N.Y. Mar. 18, 2008); *Beletsis v. Credit Suisse First Boston Corp.,* 2002 U.S. Dist. LEXIS 16586 (S.D.N.Y. Aug. 28, 2002); *Chanchani v. Salomon/Smith Barney, Inc.,* 2001 U.S. Dist. LEXIS 2036 (S.D.N.Y. Mar. 1, 2001); *Arakawa v. Japan Network Group,* 56 F. Supp. 2d 349 (S.D.N.Y. 1999). **New York cases compelling arbitration where handbook contains at-will disclaimer:** *Isaacs,* 968 F. Supp. 2d 564; *Brown,* 559 F. Supp. 2d 288, *aff'd* 331 Fed. App'x. 68 (2d Cir. 2009); *Curry,* 2008 U.S. Dist. LEXIS 20910.

[6] As to whether the Arbitration Program itself is binding, Ms. Patterson claims that there must be a "clear, explicit and unequivocal agreement to arbitrate." (Opp. at 5, 6, *citing Fiveco, Inc. v. Haber*, 11 N.Y.3d 140, 144 (2008)). Her claim would have this Court apply a more stringent standard to arbitration agreements, which is contrary to the FAA. In deciding whether an agreement to arbitrate exists, it is not state *arbitration agreement law* that applies, but state law that "govern[s] issues concerning the validity, revocability, and enforceability of contracts *generally*." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (*quoting Perry v. Thomas*, 482 U.S. 483, 493, n.9 (1987)) (emphasis added). The FAA preempts state law and state public policy to the extent specific to arbitration or in conflict with the FAA. *See Marmet Health Care Ctr., Inc. v. Brown*, 132 S. Ct. 1201, 1204 (2012). Under New York law, for a contract to be formed, there must be an offer, acceptance and consideration. *Zheng v. City of New York*, 19 N.Y.3d 556, 577 (N.Y. 2012) ("Generally, [we] look to the basic elements of the offer and the acceptance to determine whether there is an objective meeting of the minds sufficient to give rise to a binding and enforceable contract")(internal citation omitted). Nothing further is required.

Supreme Court holds, is severed because "its validity is subject to initial court determination; but the validity of the remainder of the contract (if the arbitration provision is valid) is for the arbitrator to decide." 133 S. Ct. at 503. Thus, this Court should enforce the Arbitration Program here on the basis of the Program language, which makes clear its binding nature and expressly tenders the issue of validity to the Court, not an arbitrator.  (McPeak Aff., Ex. 10, p. 61).

Facing a paucity of supporting case law, Ms. Patterson cites six New York decisions holding that an at-will employee cannot sue for breach of contract pursuant to an employee handbook or a campus code containing a contract disclaimer.[7] None of these cases involves the enforceability of a separate agreement contained in an employee handbook, let alone an arbitration program that, as here, is expressly made a "term and condition" of the employee's employment. When those are the facts:

> An arbitration agreement included in an employee handbook with language "providing that the handbook does not constitute a … contract of employment". . . is enforceable when the language of the arbitration agreement is "distinct and mandatory" and when the employee is advised of the policy and that "compliance with it [is] a condition of employment."

*Isaacs v. OCE Bus. Servs.,* 968 F. Supp. 2d 564, 571 (S.D.N.Y. 2013), *citing Brown v. St. Paul Travelers Co.,* 559 F. Supp. 2d 288, 292 (W.D.N.Y. 2008).

*Brown* is on point. In that case, the handbook stated that "[n]othing in this handbook constitutes an express or implied contract of employment," and the "Employment Arbitration Policy" likewise stated that "nothing in this Policy or any other company document constitutes an express or implied contract of employment." *Brown v. St. Paul Travelers Co.,* Case No. 1:06-

---

[7] *Martin v. S. Container Corp.,* 92 A.D.3d 647 (2nd Dep't 2012); *Dellefave v. Access Temporaries, Inc.,* 37 F. App'x 23 (2d Cir. 2002); *Baron v. Port Auth. of New York & New Jersey,* 271 F.3d 81 (2d Cir. 2001); *Jain v. McGraw-Hill Companies, Inc.,* 827 F. Supp. 2d 272 (S.D.N.Y. 2001), *aff'd,* 506 F. App'x 47 (2d Cir. 2012); *Sharkey v. J.P. Morgan Chase & Co.,* 2011 WL 135026 (S.D.N.Y. Jan. 14, 2011); and *Maas v. Cornell University,* 94 N.Y.2d 87 (1999) (professor sued a university for breach of contract for failure to follow campus code when investigating a sexual harassment charge).

cv-00688, Dkt. No. 9-13.[8] But the arbitration provision made clear, which Raymour & Flanigan's Program does as well, that arbitration was "an essential element of your employment relationship and is a condition of your employment." (*Id.*; McPeak Aff. at 58). Consequently, the court held that there <u>was</u> an agreement to arbitrate despite the disclaimers, because the arbitration policy was "distinct and mandatory," and because "[p]laintiff was advised of the policy and that compliance with it was a condition of employment" (559 F. Supp. at 292), and the Second Circuit affirmed. 331 F. App'x 68 (2d Cir. 2009).[9]

Ms. Patterson struggles to distinguish *Brown* by arguing that the language in Raymour & Flanigan's Handbook, which states that "[n]othing in this Handbook, or any other Company. . . document . . . creates a promise of continued employment, employment contract, term or obligation of any kind on the part of the Company," is broader than the disclaimer in *Brown*. (Opp. at 11-12). Her effort fails for multiple reasons:

<u>First</u>, her argument ignores the qualifying modifier at the end of the clause, which states that the Handbook creates no obligations of any kind "<u>on the part of the Company</u>." (McPeak Aff., Ex. 10., p. 5) (emphasis added).[10] That language neither expressly nor impliedly undoes her

---

[8] The Court may take judicial notice of the handbook at issue in *Brown*. *See Star Mgmt., Inc. v. Rogers,* 940 F. Supp. 512, 519 (E.D.N.Y. 1996) (court may take judicial notice of matters of public record, including the fact of litigation and related filings); *Hong Mai Sa v. Doe*, 406 F.3d 155, 158 (2d Cir. 2005).

[9] Application of general contract principles further supports the conclusion that the specific and exact language of agreement in Raymour & Flanigan's Employment Arbitration Program trumps the Handbook's general contract disclaimer. It is axiomatic that, in construing contracts, courts must give "'specific terms and exact terms are given greater weight than general language.'" *Aramony v. United Way*, 254 F.3d 403, 413 (2d Cir. 2001) (*quoting* RESTATEMENT (SECOND) OF CONTRACTS § 203(c) (1981)); *see also* 5 CORBIN ON CONTRACTS § 24.23 (2007) ("[T]he more specific term should usually be held to prevail over the more general term").

[10] To the extent Ms. Patterson argues that the Court should construe this language as lacking mutuality of obligation, her argument should be rejected for two reasons. <u>First</u>, given the specific language of agreement in the Arbitration Program that binds both parties, the Company does not read the Handbook disclaimer as excusing it alone from arbitrating covered claims. Thus, there is mutuality, because both parties agreed to be bound by the Arbitration Program (McPeak Aff., Ex. 10, p. 61 ("Under this Program, you <u>and we</u> waive our respective rights to have a Claim decided by a court…")(emphasis added)). <u>Second</u>, mutuality of obligation is not required in arbitration contracts under New York law. *See, e.g., Sablosky v. Edward S. Gordon Co., Inc.,*73 N.Y.2d 133, 136 (1989) (rejecting the argument that mutuality of obligation was required to uphold an arbitration agreement and noting that "contract law

agreement to arbitrate claims. Second, her argument ignores the contract interpretation principle *ejusdem generis,* pursuant to which "the meaning of a word in a series of words is determined 'by the company it keeps'"; *i.e.*, "a series of specific words describing things or concepts of a particular sort are used to explain the meaning of the general one in the same series." *242-44 E. 77th St., LLC v. Greater N.Y. Mut. Ins. Co.,* 31 A.D.3d 100, 103-04 (1st Dept. 2006). Here, the words "of any kind" relate back to the earlier reference to "continued employment" and "employment contract," and do not expand the disclaimer beyond notifying employees that the handbook does not change their "at-will" status. Third, the decision in *U.S. ex rel. Harris v. EPS, Inc.,* 2006 WL 1348173 (D. Vt. May 16, 2006), which Plaintiff cites at pages 11-12 of her opposition, does not help her, since it applies Vermont, not New York, law.

Here, as in *Brown,* the Arbitration Program is distinct (appearing under its own, separate, heading), and it makes it unmistakably clear up front and in bold font: **"This Program is an essential element of your continued employment relationship with Raymour & Flanigan and is a condition of your employment."** (McPeak Aff., Ex. 10, p. 58)(bold emphasis original). Under New York law, Plaintiff's "continued employment, without more, is sufficient to manifest assent" to this term and condition of Plaintiff's employment. *See Manigault,* 318 Fed. Appx. at 8. In sum, by continuing her employment after the promulgation of the Arbitration Program, Ms. Patterson accepted its provision, and she is bound by her agreement to arbitrate her claims.

### III.  THE NLRA CARVE-OUT, WHICH PERMITS EMPLOYEES TO FILE AN UNFAIR LABOR PRACTICE CHARGE WITHOUT FEAR OF RETALIATION, DOES NOT VITIATE THE CLASS ACTION WAIVER.

At pages 13-15 of her opposition, Ms. Patterson focuses upon the following from the

---

has abandoned the idea that to render an agreement enforceable there must be mutual promises creating identical rights and obligations in each party.") Thus, this Court need not find that the Company had a mutual obligation to arbitrate claims, because Ms. Patterson's continued employment was sufficient consideration to bind her to a unilateral agreement to arbitrate.

parties' ten-page arbitration agreement, in an effort to avoid the Class Action Waiver:

> This <u>Program</u> also does ***not*** . . . waive any rights you might have under the National Labor Relations Act ("NLRA") nor does it exclude the National Labor Relations Board from jurisdiction over disputes covered by the NLRA. Thus, the Program does not prevent you from filing an unfair labor practice charge under the NLRA, and Raymour & Flanigan will not take any prohibited action against you for filing such a charge.

(McPeak Aff., Ex. 10, p. 61)(bold and italic emphasis original). She argues that, since employees have an alleged right to "participat[e] with other employees in litigation," she may proceed on a class or collective basis. (Opp. at 13). Her expansive reading of the carve-out should be rejected:

<u>First</u>, she relies on *In re D.R. Horton, Inc.*, 357 N.L.R.B. No. 184 (Jan. 3, 2012) for the proposition that she has a right to bring a class or collective action under the NLRA; a notion that the Second Circuit has correctly rejected. (*See infra* at Section IV).

<u>Second</u>, her reading, if accepted, would rewrite the plain language of the Arbitration Program by eradicating the class and collective action waiver language, which makes clear that both parties give up the right to participate in such proceedings: **"Claims under this Program cannot be litigated by way of class or collective action. Nor may Claims be arbitrated by way of a class or collective action . . . notwithstanding any other provision of this Program . . . ."** (McPeak Aff., Ex. 10, p. 66). *See LaSalle Bank Nat. Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005) (a contract interpretation that has "the effect of rendering at least one clause superfluous or meaningless . . . is not preferred and will be avoided if possible") (internal citations omitted).

<u>Third</u>, her reliance upon the carve-out in a vacuum causes her to ignore the plain language of the Class Action Waiver and the sentence following the carve-out, which states: "<u>Thus</u>**,** the Program does not prevent you from filing an unfair labor practice charge under the NLRA, and Raymour & Flanigan will not take any prohibited action against you for filing such a

7

charge." (McPeak Aff., Ex. 10, p. 61)(emphasis added), which clarifies that the preceding sentence is meant to preserve the right to file *a charge* with the NLRA without retaliation.[11]

Fourth, her reading of the disclaimer would gut the class waiver language altogether; an absurd result that would be contrary to multiple New York rules of contract construction. *See, e.g., Westminster Securities Corp. v. Petrocom Energy Ltd.,* 456 Fed. App'x. 42, 43 (2d Cir. 2012) ("The rules of contract construction require us to adopt an interpretation which gives meaning to every provision of the contract") (internal citations omitted); *Landmark Ventures, Inc. v. Wave Sys. Corp.,* 2012 WL 3822624, at *3 (S.D.N.Y. Sept. 4, 2012)("[A] court must avoid interpreting a contract in a manner that would be 'absurd, commercially unreasonable, or contrary to the reasonable expectations of the parties'")(citation omitted).

Fifth, and finally, the same argument Ms. Patterson makes here has been correctly rejected by the district court in *Powell v. BJ's Wholesale Club, Inc.*, No. 14-cv-00081 (D. Conn. Aug. 13, 2014). In that case, the class action waiver itself included a sentence that read: "Notwithstanding this section, [employer] agrees that I am not waiving my right under Section 7 of the National Labor Relations Act to file or participate in a class or collective action in court, and [employer] agrees that I will not be disciplined or threatened with discipline if I do so." *Id.* (slip op. p. 4). The Court rejected the employee's argument that this language defeated the class action waiver: "[T]he court does not conclude that the preservation of the plaintiff's rights under

---

[11] Even if Plaintiff's expansive reading were correct, it could still be harmonized with the Class Action Waiver. The carve-out is not meant to abandon the Waiver. Rather, it is meant to advise employees that their assertion or participation in class or collective actions will not result in discipline or threats. This reading is consistent with the Guideline of the former NLRB General Counsel in its "Guideline Memorandum Concerning Unfair Labor Practice Charges Involving Employee Waivers in the Context of Employers' Mandatory Arbitration Policies." GC-10-06 (June 16, 2010). In that memorandum, then-NLRB General Counsel concluded that "[e]ven if an employee is covered by an arrangement lawful under *Gilmer* [*v. Interstate/Johnson Lane Corp.,* 500 U.S. 20 (1991)]*,* the employee is still protected by Section 7 of the Act if he or she concertedly files an employment-related class action lawsuit in the face of that agreement and may not be threatened or disciplined for doing so. ***The employer, however, may lawfully seek to have a class action complaint dismissed by the court on the ground that each purported class member is bound by his or her signing of a lawful Gilmer agreement/waiver.***" *Id.* at 7 (emphasis added).

8

Section 7 . . . requires the court to deny arbitration in this case [on an individual basis]." *Id.* (slip op. pp. 9-10) (emphasis in original).

### IV. THE NLRB'S *D.R. HORTON* DECISION DOES NOT VOID THE COLLECTIVE AND CLASS ACTION WAIVER.

Finally, Ms. Patterson argues that, under *D.R. Horton,* 357 NLRB No. 184 (2012), the right to engage in "concerted activities" bars class/collective action waivers. (Opp. at 15-18). Her counsel previously asserted this same argument in *Litvinov v. United Health Group, Inc.,* 2014 WL 1054394 (S.D.N.Y. March 11, 2014), and the court rightly rejected it in a brief footnote. *Id.* at *3, n. 11. That same result is appropriate here for at least four reasons:

First, *D.R. Horton* conflicts with multiple decisions of the United States Supreme Court, holding that arbitration agreements containing class action waivers are enforceable. *See American Express Co. v. Italian Colors Rest.,* 133 S. Ct. 2304, 2309 (2013); *see also, e.g., AT&T Mobility LLC v. Concepcion,* 131 S. Ct. 1740, 1745 (2011).

Second, the Second Circuit has rejected *D.R. Horton. See Sutherland v. Ernst & Young LLP,* 726 F.3d 290, 297 (2d Cir. 2013). No district judge in this Circuit has followed *D.R. Horton* before or after *Sutherland,*[12] and the Fifth Circuit has also rejected the NLRB's reasoning in *D.R. Horton, Inc. v. Nat'l Labor Relations Bd.,* 737 F.3d 344, 362 (5th Cir. 2013).

Third, this Court does not owe deference to decisions by the NLRB, as Plaintiff concedes (Opp. at 17), when the NLRB is interpreting or attempting to reconcile the FAA with the NLRA. *See Lloyd v. J.P. Morgan Chase & Co.,* 2013 U.S. Dist. LEXIS 129102, at *21 (S.D.N.Y. 2013).

Fourth, the Supreme Court has repeatedly held, both before and after *D.R. Horton* was decided, that the "FAA establishes a liberal federal policy favoring arbitration agreements" and

---

[12] *See, e.g., Litvinov,* 2014 WL 1054394, at *3, n. 11; *Torres v. United Healthcare Services, Inc.,* 920 F. Supp. 2d 368, at *24-27 (E.D.N.Y. 2013); *Dixon v. NBCUniversal Media, LLC,* 947 F. Supp. 2d 390, 403 (S.D.N.Y. May 28, 2013); and *LaVoice v. UBS Fin. Servs.,* 2012 U.S. Dist. LEXIS 5277, at *20 (S.D.N.Y. 2012), to name a few.

"requires courts to enforce agreements to arbitrate according to their terms." *CompuCredit Corp. v. Greenwood,* 2012 U.S. LEXIS 575, at *5 (2012). "That is the case even when the claims at issue are federal statutory claims, *unless the FAA's mandate has been 'overridden by a contrary congressional command.'*" (*Id.*; emphasis added, internal citations omitted). Nothing in the NLRA suggests that Section 7 trumps the FAA. Section 7 expressly provides employees with the right to engage in concerted action, but also to "refrain" from engaging in concerted action (*see* 29 U.S.C. § 157), including, by Plaintiff's reasoning, the right to *refrain* from participating in collective and class actions set forth in the Arbitration Program.

For each of these reasons, Plaintiff's *D.R. Horton* argument should be rejected.[13]

## CONCLUSION

For all of the foregoing reasons, and for those set forth in Defendant's opening Memorandum, Defendant respectfully requests that the Court enforce the plain language of the Employee Arbitration Program, including the Class Action Waiver, and compel Plaintiffs to arbitrate their claims on an individual basis, dismiss Plaintiff's claims without prejudice, and dismiss the claims of any opt-in plaintiffs without prejudice as well.

Dated: October 29, 2014
      New York, New York

Respectfully Submitted,

*/s/ David M. Wirtz*
David M. Wirtz
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY  10022-3298
212.583.9600

---

[13] *D.R. Horton* was also arguably decided without the proper quorum, yet another reason why this Court should decline to follow it. *See Dixon,* 947 F. Supp. 2d at 403.