UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/27/2015
```

-----------------------------------------------------------------X
CONNIE PATTERSON, on behalf of herself and         :
all others similarly situated,                                    :
                                                                         :
                                              Plaintiff,         :              14-CV-5882 (VEC)
                                                                         :
                           -against-                             :              OPINION AND ORDER
                                                                         :
RAYMOURS FURNITURE COMPANY, INC.,             :
                                                                         :
                                              Defendant.       :
-----------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

      Plaintiff brings this putative collective and class action against her former employer for

alleged violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law

("NYLL").  Defendant moved to compel arbitration pursuant to an arbitration clause contained in

its employee handbook.  For the reasons stated below, Defendant's motion is GRANTED.

## BACKGROUND

      Defendant is a furniture retailer that operates stores in multiple states, including New

York.  Compl. ¶ 2; McPeak Decl. ¶ 4.  Plaintiff worked as a Sales Associate from June 20, 2005,

to February 2, 2014, the date on which she was terminated.  Compl. ¶ 17; McPeak Decl. ¶¶ 5, 11,

Ex. 1.  Plaintiff claims that Defendant misclassified all of its Sales Associates as exempt from the

overtime provisions of the FLSA and NYLL.  Compl. ¶ 5.  As a result, Defendant failed to pay

them overtime wages for all the hours worked in excess of forty hours per week in violation of

both statutes.  *Id.* ¶¶ 78, 87.[1]

---

[1]     Plaintiff also alleges a variety of other state labor law violations.

When Plaintiff was hired, Defendant provided her with a copy of its Associate Handbook ("Handbook").  McPeak Decl. ¶ 5.  Plaintiff signed an acknowledgment form stating that she understood the Handbook's contents to be "applicable to the position" for which she had been hired.  McPeak Decl. Ex. 1.  The form stated that the Handbook's contents were "not promissory or contractual in nature" and that Plaintiff's employment was "not for any stated period."  *Id*.  In October 2009, Defendant updated its Handbook and distributed copies to all employees.  McPeak Decl. ¶ 6.  Plaintiff acknowledged that her continued employment would constitute her agreement to the 2009 changes and all future changes made to the Handbook.  McPeak Decl. Ex. 2.  The 2009 acknowledgment form stated that "nothing in the Handbook constitutes a contract or promise of continued employment," that Plaintiff's employment was "at will" and that the parties had not "entered into an employment agreement for a specified period of time."  *Id*.

In February 2012, Defendant issued a revised version of its Handbook, which, for the first time, included the Employment Arbitration Program ("EAP").  McPeak Decl. ¶ 12, Ex. 6.  Defendant notified its employees by email and required them to acknowledge that they had reviewed the updated Handbook.  McPeak Decl. ¶ 13, Exs. 7, 8.  Plaintiff did so.  McPeak Decl. Ex. 9.  Defendant amended its Handbook one more time in April 2013 and again emailed its employees and required them to acknowledge the updates.  McPeak Decl. ¶ 18, Ex. 11.  Plaintiff electronically acknowledged her review of the Handbook.  McPeak Decl. Ex. 12.

Page five of the 2013 version of the Handbook declares: "**THIS HANDBOOK IS NOT A CONTRACT OF EMPLOYMENT.  All Associates of the Company are employed on an 'at will' basis**."  McPeak Decl. Ex. 10 at 5 (emphasis in original).  It goes on to state that the Handbook "is intended for informational purposes only" and that nothing in it "**creates a promise of continued employment, employment contract, term or obligation of any kind on the part of the Company**."  *Id*. (emphasis in original).  On the same page, the document states

that "[c]ontinuing employment after the issuance of this Handbook (or any subsequent revision) constitutes the associate's agreement to rules, policies, practices and procedures contained herein." *Id.*

The Handbook describes the EAP as "**an essential element of your continued employment relationship**" and "**a condition of your employment**." *Id.* at 58 (emphasis in original).  It also provides that the EAP "**is not a contract of employment and does not change your status as an at-will employee**." *Id.* (emphasis in original).  Under the EAP, employees are required to arbitrate "any employment-related or compensation-related claims . . . that in any way arise from or relate to your employment with us . . . **and** that are based upon a legally protected right." *Id.* at 59 (emphasis in original).  The EAP defines "legally protected right" to include rights arising under the "the federal Fair Labor Standards Act or any state wage and hour laws." *Id.*  Finally, the program has a class action waiver:

> **Claims under this Program cannot be litigated by way of class or collective action.  Nor may Claims be arbitrated by way of a class or collective action.  All Claims between you and us must be decided individually.  This means that, notwithstanding any other provision of this Program, if you . . . elect to arbitrate a Claim, . . . you . . . will [not] have the right . . . to . . . obtain relief from a class action . . ..**

*Id.* at 66 (emphasis in original).

Defendant moves to compel arbitration based on the company's EAP.

## DISCUSSION

In deciding a motion to compel arbitration under the Federal Arbitration Act ("FAA"), 29 U.S.C. §§ 3 and 4, the Court "applies a standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) (citations omitted).  A motion to compel arbitration may be granted "when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that movant is entitled to judgment as a matter of law." *Thomas v. Pub. Storage, Inc.*, 957 F.Supp.2d 496, 499 (S.D.N.Y. 2013) (citations and internal quotation marks omitted). "All facts, inferences, and ambiguities must be viewed in a light most favorable to the nonmovant." *Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's, London*, 136 F.3d 82, 86 (2d Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). If the Court determines "that an arbitration agreement is valid and the claim before it is arbitrable, it must stay or dismiss further judicial proceedings and order the parties to arbitrate." *Nunez v. Citibank, N.A.*, No. 08-CV-5398 (BSJ), 2009 WL 256107, *2 (S.D.N.Y. Feb. 3, 2009) (citations omitted).

## I.      The FAA Mandates Arbitration of Plaintiff's Claims

The FAA was designed to "ensure judicial enforcement of privately made agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219 (1985). Under the FAA, a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This section manifests "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). To decide a motion to compel arbitration, the Court must: (1) determine whether the parties agreed to arbitrate; (2) determine the scope of the parties' agreement; (3) if federal statutory claims are asserted, consider whether Congress intended those claims to be nonarbitrable; and (4) if some, but not all, of the claims in

the case are arbitrable, determine whether to stay the balance of the proceedings pending arbitration. *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir. 1987).

### A.   The Parties Agreed to Arbitrate

Plaintiff asserts that there is no arbitration agreement between her and Defendant.  The Court disagrees.

The question whether the parties agreed to arbitrate is governed by state law principles regarding contract formation.  *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995); *see also Schnabel v. Trilegiant Corp.,* 697 F.3d 110, 119 (2d Cir. 2012) ("Whether or not the parties have agreed to arbitrate is a question of state contract law.").  In applying state law principles, however, the FAA will preempt "state law that treats arbitration agreements differently from any other contracts." *Chelsea Square Textiles, Inc. v. Bombay Dyeing & Mfg. Co.,* 189 F.3d 289, 295 (2d Cir. 1999).

Under New York law, a party who signs a written contract is conclusively presumed to know its contents and to assent to them, and he is therefore bound by its terms and conditions. *Level Exp. Corp. v. Wolz, Aiken & Co.*, 305 N.Y. 82, 87 (1953).  With regards to arbitration agreements in the employment context, "[c]ourts in this district routinely uphold arbitration agreements contained in employee handbooks where . . . the employee has signed an acknowledgment form." *Chanchani v. Salomon/Smith Barney, Inc.*, No. 99-CV-9219 (RCC), 2001 WL 204214, *3 (S.D.N.Y. Mar. 1, 2001); *see also Litvinov v. UnitedHealth Grp. Inc.*, No. 13-CV-8541 (KBF), 2014 WL 1054394, *3 (S.D.N.Y. Mar. 10, 2014) (the parties agreed to arbitrate; the employee "electronically acknowledged that she received and reviewed the Arbitration Policy" of her employer.); *Beletsis v. Credit Suisse First Boston, Corp.*, No. 01-CV-6266 (RCC), 2002 WL 2031610, *3 (S.D.N.Y. Sep. 4, 2002) (the parties agreed to arbitrate; the employee "signed the Compliance Certification" that referred to the employer's arbitration

program); *Arakawa v. Japan Network Grp.*, 56 F.Supp.2d 349, 352 (S.D.N.Y. 1999) ("[T]he parties' agreement to arbitrate is evidenced by the Employee Handbook and the Acknowledgment signed by plaintiff.").

In this case, there is an agreement to arbitrate because the Plaintiff acknowledged that she had read and reviewed the 2013 version of Defendant's Handbook, containing the EAP.  McPeak Decl. Ex. 12.  The 2013 Handbook expressly provided that "[a]s an associate, [Plaintiff was] responsible for abiding by Raymour & Flanigan's rules, policies and practices."  McPeak Decl. Ex. 10 at 5.  Under these circumstances, it is clear that Plaintiff agreed to be bound by the EAP.

Moreover, the FAA does not require a signed writing, but only a writing, 9 U.S.C. §§ 2, 3 and 4, and, "[u]nder New York law, the conduct of the parties may lead to the inference of a binding agreement."  *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 582 (2d Cir. 2006) (citing *Jemzura v. Jemzura,* 36 N.Y.2d 496, 503-504 (1975)). It is well-settled that revisions to an employee handbook are binding when the employee continues to work after receiving notice of the revisions.  *See Manigault v. Macy's E., LLC.,* 318 Fed.Appx. 6, 8 (2d Cir. 2009) ("An employee may consent to a modification to the terms of employment by continuing to work after receiving notice of the modification.") (citations omitted); *see also Brown v. St. Paul Travelers Co.,* 331 Fed.Appx. 68, 70 (2d Cir. 2009) (holding that the employee's "continued employment after" repeated notifications regarding the employer's arbitration policy "lends force to the presumption that she agreed to be bound to the arbitration policy.").

By continuing to work after receiving notice of the EAP, Plaintiff agreed to the terms of the arbitration program.  When Defendant released the 2013 Handbook, Plaintiff received an email from the Vice President of Human Resources informing her that the Handbook had been revised and requiring her to review it.  McPeak Decl. Ex. 11.  Plaintiff electronically

acknowledged the Handbook a few weeks later.  McPeak Decl. Ex. 12.  As with the prior

versions, the 2013 Handbook made clear that the employee's continued employment after the

Handbook's issuance constituted the employee's agreement to its contents.  McPeak Decl. Ex. 10

at 5, 58.  After receiving notice of the EAP for the second year in a row, Plaintiff continued to

work for Defendant for approximately another year.  Compl. ¶ 17; McPeak Decl. ¶ 11.

      Plaintiff argues that *Manigault* and *Brown,* the cases relied on by Defendant, are

distinguishable because the arbitration provisions at issue in those cases were much more

prominently presented to the employees and were not included in an employee handbook.  But

*Manigault* and *Brown* did not turn on a particular degree of notice or the format in which it was

given.  For contract formation purposes, these cases simply require continued employment after

notice of the handbook's terms, without specifying any particular form of required notice.  In this

case, there is no dispute that Plaintiff continued to work for Defendant after receiving notice of

the Handbook's 2012 and 2013 revisions, including the addition of the EAP in 2012.

      In any event, Plaintiff did not receive less notice than the plaintiffs in the cited cases.  In

*Manigault*, 318 Fed.Appx. at 8, the employee received information regarding the employer's

arbitration program by mail and in *Brown*, 331 Fed.Appx. at 70, the employee received a copy of

a revised handbook and an email from her employer directing her to read all company policies

and stating that such policies were an express condition of continued employment.  In this case,

Defendant specifically highlighted the EAP when it announced the 2012 Handbook revisions,

referred employees to the page at which the program could be found, and briefly described the

program as implementing a "consistent and efficient way for our associates and the company to

resolve employment disputes."  McPeak Decl. Ex. 7.  Such notice is sufficient.

      Plaintiff's chief argument in support of her position that there is no agreement to arbitrate

is that the disclaimers at the beginning of the Handbook prevent the formation of an agreement to

arbitrate.  In support, Plaintiff relies on a group of cases that hold that an employee handbook

with language that negates the creation of contractual rights or obligations cannot be the basis of

a breach of contract claim brought by an employee against his or her employer.  *See Maas v.*

*Cornell Univ.*, 94 N.Y.2d 87 (1999); *Dellefave v. Access Temp., Inc.,* 37 Fed.Appx. 23 (2d Cir.

2002); *Baron v. Port Auth. of NY & NJ,* 271 F.3d 81 (2d Cir. 2001); *Jain v. McGraw-Hill Co.,*

827 F.Supp.2d 272 (S.D.N.Y. 2011); *Sharkey v. J.P. Morgan Chase & Co.,* No. 10-CV- 3824,

2011 WL 135026 (S.D.N.Y. Jan. 14, 2011).

Plaintiff's argument fails for two reasons.  First, none of the cases cited by Plaintiff

considered the enforceability of an arbitration agreement included in an employee handbook.

> An arbitration agreement included in an employee handbook with language
> "providing that the handbook does not constitute a ... contract of employment or
> that the arbitration policy may be amended" is enforceable when the language of
> the arbitration agreement is "distinct and mandatory" and when the employee is
> advised of the policy and that "compliance with it [is] a condition of employment."

*Isaacs v. OCE Bus. Serv., Inc.*, 968 F.Supp.2d 564, 571 (S.D.N.Y. 2013) (citing *Brown v. St.*

*Paul Travelers Co.,* 559 F.Supp.2d 288, 292 (W.D.N.Y. 2008), *aff'd,* 331 Fed.Appx. 68 (2d Cir.

2009)).  Here, the EAP clearly states: "This Program is an essential element of your continued

employment relationship with Raymour & Flanigan and is a condition of your employment."

McPeak Decl. Ex. 10 at 58 (emphasis omitted).  This language stands in sharp contrast with

other language in the Handbook negating the creation of "a promise of continued employment,

employment contract, term or obligation of any kind."  *Id.* at 5 (emphasis omitted).  The EAP's

language is, consequently, "distinct and mandatory."[2]  *Isaacs*, 968 F.Supp.2d at 571.

Second, even if the Court were to conclude that the language of the EAP is not

sufficiently distinctive, the disclaimers at the beginning of the Handbook do not prevent contract

---

[2]        This conclusion also answers Plaintiff's argument that the disclaimer in the EAP prevents contract
formation.  The language in the EAP states that "it is not a contract of employment and does not change your status

formation with respect to the EAP.  The disclaimers in Defendant's Handbook are different from those in the cases relied on by Plaintiff because, instead of negating the creation of contractual obligations in general, they do so only "on the part of the Company."  McPeak Decl. Ex. 10 at 5 (emphasis omitted).  Although the Handbook does not impose contractual obligations on Defendant, the arbitration provisions are nonetheless binding on Plaintiff.

Finally, Plaintiff asks the Court to follow a New Jersey District Court decision holding that Defendant's Handbook does not contain a binding arbitration agreement.  *See Raymours Furniture Co., Inc. v. Rossi*, No. 13-CV-4440 (JBS), 2014 WL 36609, *6 (D.N.J. Jan 2, 2014). *Rossi* is premised partly on New Jersey law that is inconsistent with New York law.  In New Jersey, continued employment after receipt of an employee handbook does not constitute acceptance of its terms.  *See id*.  That rule of law is entirely at odds with New York law as interpreted in *Manigault* and *Brown* and, therefore, *Rossi* is not even persuasive precedent for this case.

**B.  All of Plaintiff's Claims are Within the Scope of the EAP and are Arbitrable**

The remaining *Genesco* factors further weigh in favor of arbitration.  With respect to the second factor, it is undisputed that Plaintiff's claims under the FLSA and NYLL fall within the EAP's scope.  Defendant's EAP covers "any employment-related or compensation-related claims . . . that in any way arise from or relate to your employment with us . . . and that are based upon a legally protected right," including rights under the "the federal Fair Labor Standards Act or any state wage and hour laws."  McPeak Decl. Ex. 10 at 59 (emphasis omitted).  As for the

---

as an at-will employee."  McPeak Decl. Ex. 10 at 58 (emphasis omitted).  That language cannot be read to prevent the formation of the agreement to arbitrate because its only purpose – quite obviously – is to avoid modification of the "at-will" regime that governs the parties' employment relationship.

9

third factor, there is no indication that Congress intended Plaintiff's FLSA claims to be

nonarbitrable.  *See, e.g., Martin v. SCI Mgmt. L.P.*, 296 F.Supp.2d 462, 467 (S.D.N.Y. 2003).[3]

## II.     The EAP's Class Action Waiver Is Enforceable[4]

Section 2 of the FAA "requires courts to enforce agreements to arbitrate according to

their terms," *CompuCredit Corp. v. Greenwood*, 132 S.Ct. 665, 669 (2012) (citation omitted),

"including terms that specify . . . the rules under which that arbitration will be conducted."  *Am.*

*Express Co. v. Italian Colors Rest.*, 133 S.Ct. 2304, 2309 (2013) (quoting *Volt Info. Sci., Inc. v.*

*Bd. of Tr. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)) (internal quotation marks

omitted).

Plaintiff advances two arguments why the EAP's class action waiver is unenforceable.

Neither argument has merit.

### A. The EAP Does Not Carve Out Plaintiff's NLRA Right to Proceed Collectively

Plaintiff first argues that the class action waiver in Defendant's EAP should not be

enforced because the EAP carves out Plaintiff's rights under the National Labor Relations Act

("NLRA").  The EAP states:

> This Program also does not: . . . waive any rights you might have under the National
> Labor Relations Act ("NLRA") nor does it exclude the National Labor Relations
> Board from jurisdiction over disputes covered by the NLRA. Thus, the Program

---

[3]      Because all of Plaintiff's claims are subject to arbitration, the Court need not address the fourth *Genesco*
factor regarding a stay.

[4]      Normally, "once a district court determines that the arbitration agreement is valid and the parties have
agreed to arbitrate, the arbitrator should determine the meaning of specific provisions of the arbitration agreement at
issue."  *Tarulli v. Circuit City Stores, Inc.*, 333 F.Supp.2d 151, 158 (S.D.N.Y. 2004) (citation omitted).  Thus,
"procedural questions which grow out of the dispute and bear on its final disposition are presumptively *not* for the
judge, but for an arbitrator, to decide."  *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (emphasis in
original) (citation and internal quotation marks omitted).  But, ultimately, "arbitration is a matter of contract," *Rent-
A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010), and the EAP to which the parties are bound provides that
"disputes about the validity, enforceability, coverage or scope of this Program or any part thereof (including, without
limitation, the *Class Action Waiver* described below)" are for a court, not an arbitrator, to decide.  McPeak Decl. Ex.
10 at 60-61 (emphasis added).  Consequently, the Court can properly address this issue.

does not prevent you from filing an unfair labor practice charge under the NLRA . . ..

McPeak Decl. Ex. 10 at 61 (emphasis omitted).  Under the NLRA, employees have the right to "engage in . . . concerted activities for the purpose of . . . mutual aid or protection . . .."  29 U.S.C. § 157.  That phrase has been interpreted to include a right to proceed collectively in litigation or arbitration.  *See Eastex, Inc. v. NLRB,* 437 U.S. 556, 566 (1978) (recognizing that employees engage in concerted activity "when they seek to improve working conditions through resort to administrative and judicial forums."); *see also In re D. R. Horton, Inc.*, Case 12-CA-25764, 2012 WL 36274, *2 (N.L.R.B. Jan. 3, 2012) (holding that arbitration is also protected as concerted activity).  Consequently, Plaintiff claims that she should be permitted to arbitrate her claims collectively, notwithstanding the EAP's class action waiver.

This argument is unpersuasive.  The EAP provides that "*notwithstanding any other provision of this Program*, if you . . . elect to arbitrate a Claim, . . . you . . . will [not] have the right . . . to . . . obtain relief from a class action . . . ."  McPeak Decl. Ex. 10 at 66 (emphasis added).  Under New York law, "clauses similar to the phrase '[n]otwithstanding any other provision' trump conflicting contract terms."  *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 917 (2d Cir. 2010) (citing *Int'l Multifoods Corp. v. Commercial Union Ins. Co.,* 309 F.3d 76, 90-91 (2d Cir. 2002); *L & B 57th St., Inc. v. E.M. Blanchard, Inc.,* 143 F.3d 88, 93 (2d Cir. 1998); *Morse/Diesel, Inc. v. Trinity Indus., Inc.,* 67 F.3d 435, 438-439 (2d Cir. 1995)).  Thus, to the extent the EAP language on which Plaintiff relies can be read to include the right to

collective activity outside of the context of filing an unfair labor practice claim with the NLRB,[5]

the EPA's class action waiver overrides the language on which Plaintiff relies.

### B. The EPA's Class Action Waiver Does Not Violate the NLRA

Finally, Plaintiff asserts that the class action waiver in Defendant's EAP should not be

enforced because it violates section 157 of the NLRA.  Plaintiff relies heavily on *D.R. Horton*,

2012 WL 36274, at **1, 5, in which the NLRB held that an employer violates the NLRA when

"it requires employees . . . as a condition of their employment, to sign an agreement that

precludes them from filing joint, class, or collective claims addressing their wages, hours or

other working conditions against the employer in any forum, arbitral or judicial."  The NLRB

further held that the NLRA does not conflict with the FAA because the latter does not require a

party to forgo substantive rights.  *Id.* at *13.  In the alternative, the NLRB indicated that if a

conflict exists between the two statutes, the FAA must yield to the NLRA.  *Id.* at *16.  Although

the Fifth Circuit refused to enforce *D.R. Horton* in this respect, *see D.R. Horton, Inc. v. NLRB*,

737 F.3d 344 (5th Cir. 2013), the NLRB has recently reaffirmed its position in *Murphy Oil USA,

Inc.*, Case 10-CA-038804, 2014 WL 5465454 (N.L.R.B. Oct. 28, 2014).

In *Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 296 (2013), the Second Circuit held

that the FLSA, which has a grant of authority for collective action that is much more specific

than that provided by the NRLA, *see* 29 U.S.C. § 216(b),[6] did not prevent enforcement of a class

---

[5]     Defendant argues that the language at issue should be read to preserve only the right to file an unfair labor
practice charge with the National Labor Relations Board ("NLRB") or to guarantee employees that they will not be
retaliated against for initiating an unfair labor practices charge.  Neither reading is particularly persuasive because
the EAP states that it does not waive "*any* rights" an employee might have under the NLRA, without further
qualification.  McPeak Decl. Ex. 10 at 61 (emphasis added).  Nonetheless, given New York law, as discussed above,
any conflict between the two phrases has to be resolved in favor of the class action waiver because it includes the
phrase "notwithstanding any other provision of this Program."

[6]     Section 216(b) of the FLSA, in relevant part, provides:

   An action to recover the liability prescribed in either of the preceding sentences may be maintained
   against any employer (including a public agency) in any Federal or State court of competent

action waiver included in an arbitration agreement.  In a footnote, the Court declined to follow

the NLRB's views as articulated in *D.R. Horton*.  *Sutherland,* 726 F.3d at 297 n.8.  Drawing

upon the Second Circuit's analysis, this Court finds that the NLRA does not stand in the way of

the FAA's command to enforce arbitration agreements "according to their terms."  *CompuCredit*,

132 S.Ct. at 669.  Significantly, other judges in this District have reached the same conclusion.

*See Litvinov,* at *3 n.11; *Lloyd v. J.P. Morgan Chase & Co.*, Nos. 11-CV-9305 (LTS), 12-CV-

2197 (LTS), 2013 WL 4828588, *6 n.7 (S.D.N.Y. Sep. 9, 2013); *LaVoice v. UBS Fin. Serv., Inc.*,

No. 11-CV-2308 (BSJ), 2012 WL 124590, *6 (S.D.N.Y. Jan 13, 2012).

Other than pointing out that the NLRB has recently reiterated its view in the *Murphy Oil*

decision,[7] Plaintiff makes no new arguments to show that the cited cases were wrongly decided.

Rather, she recites the arguments made by the NLRB in *D.R. Horton*, which are the same

arguments that the Second Circuit considered and rejected in *Sutherland*.  Without more, the

---

jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated . . ..

29 U.S.C. § 216(b).

[7]      It also appears that the NLRB stands alone in holding that the NLRA overrides the FAA relative to class action waivers.  Like the Second Circuit and this Court, a significant number of circuit and district courts around the country have declined to follow *D.R. Horton. See, e.g., D.R. Horton,* 737 F.3d at 362; *Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1053-1054 (8th Cir. 2013); *Carey v. 24 Hour Fitness USA, Inc.*, Civil Action No. H–10–3009, 2012 WL 4754726, *2 (S.D.Tex. Oct. 4, 2012); *Tenet HealthSystem Phila., Inc. v. Rooney*, No. 12-MC- 58, 2012 WL 3550496, **2-4 (E.D.Pa. Aug. 17, 2012); *Delock v. Securitas Sec. Servs. USA, Inc.*, 883 F.Supp.2d 784, 789 (E.D.Ark. 2012); *Morvant v. P.F. Chang's China Bistro, Inc.*, 870 F.Supp.2d 831, 841-845 (N.D.Cal. 2012).

Court declines Plaintiff's invitation to depart from this precedent.[8]  For all of these reasons, the

Court therefore finds that the EAP's class action waiver is enforceable.

## CONCLUSION

For the forgoing reasons, Defendant's motion to compel arbitration is GRANTED.

Because all claims are arbitrable, the case is dismissed.  The Clerk of the Court is respectfully

directed to terminate docket number 14 and to close the case.

**SO ORDERED.**

**Date:  March 27, 2015**
**New York, New York**

**VALERIE CAPRONI**
**United States District Judge**

---

[8]     The Court also notes that *Sutherland* is entirely consistent with recent Supreme Court cases enforcing class action waivers.  "The overarching purpose of the FAA," the Court explained, "is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings.  Requiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA."  *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740, 1748 (2011); *see also Am. Express Co.*, 133 S.Ct. at 2312.